# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00280-COA

HUMPHREYS COUNTY MEMORIAL                                      APPELLANT
HOSPITAL

v.

DEBRA GRIFFIN                                                  APPELLEE

DATE OF JUDGMENT:                01/22/2014
TRIAL JUDGE:                     HON. JANNIE M. LEWIS
COURT FROM WHICH APPEALED:       HUMPHREYS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          WILLIE GRIFFIN
ATTORNEYS FOR APPELLEE:          PRECIOUS T. MARTIN SR.
                                 CRYSTAL WISE MARTIN
                                 SUZANNE KEYS
NATURE OF THE CASE:              CIVIL - CONTRACT
TRIAL COURT DISPOSITION:         RULED IN FAVOR OF APPELLEE IN
                                 FINDING A LEGALLY BINDING AND
                                 ENFORCEABLE CONTRACT EXISTED
                                 BETWEEN THE PARTIES AND APPELLEE
                                 WAS ENTITLED TO SEVERANCE PAY
DISPOSITION:                     AFFIRMED - 07/21/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ISHEE AND MAXWELL, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In December 2006, at the end of her five-year contract with Humphreys County

Memorial Hospital, Debra Griffin submitted her letter of resignation to the hospital board.

After some discussion at the board meeting, the minutes reflect that the board requested that

Griffin remain in her position as hospital administrator for another year so that the hospital

could seek a suitable replacement. She agreed. Shortly thereafter, the board reconvened and

terminated Griffin. Griffin filed suit in the Humphreys County Circuit Court seeking severance payment pursuant to her contract. After a bench trial, the circuit court ruled in favor of Griffin. The hospital now appeals. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. On January 1, 2002, the board and Griffin entered into a five-year contract to employ Griffin as the hospital administrator. Over the next few years, Griffin came under scrutiny, in part for failure to pay the hospital's taxes but also for other financial problems suffered by the hospital. During that time, the board's attorney passed away and several board members were replaced.

¶3. In November 2006, Griffin submitted her letter of resignation to the board at a board meeting. The board offered to "extend the contract" for another year if Griffin would agree to remain in her position until a replacement could be found to begin work in January 2008. Griffin agreed and withdrew her letter of resignation.

¶4. Since the board was without an attorney, the board's then-chairperson asked Griffin to draft another contract to mirror her 2002 contract with the exception of the length of her employment. Griffin drew up the contract, but quietly made several changes including the addition of a provision dealing with venue and the deletion of a provision allowing for termination for immoral conduct. One provision that was not altered from the 2002 contract related to severance pay. Pursuant to the provision, Griffin was entitled to severance pay unless she was terminated for the conviction of a felony, she died, or she resigned. The board's then-chairperson signed the 2007 contract. Nonetheless, despite numerous board

2

meetings after the signing of the contract, the contract was never presented to the board for approval.

¶5.     Griffin reported to work in January 2007. Shortly thereafter, the board convened without her present and decided to terminate her employment. A letter of termination was presented to Griffin to be effective immediately. Griffin requested severance pay, but her request was denied. She then filed the instant lawsuit.

¶6.     After a bench trial on the matter, the circuit court determined that the 2007 contract was void because it constituted an attempted unilateral modification to the existing 2002 contract. However, the circuit court determined that the board's reflection in its minutes to "extend Griffin's contract" was an indication that there was a meeting of the minds to extend the 2002 contract in its entirety for a period of one year and, thus, a valid contract existed between the parties. Accordingly, the circuit court analyzed Griffin's request for severance pay under the provisions of the 2002 contract. In doing so, the circuit court determined that severance pay was warranted. Both parties were asked to submit proposed amounts of severance pay. After determining that vacation time was not authorized, the circuit court relied on the agreed-upon base amount of $115,007.27 in awarding Griffin severance pay. Aggrieved, the hospital now appeals.

**DISCUSSION**

¶7.     In an appeal from a bench trial, "we review the circuit court's interpretation and application of the law de novo, and its findings of fact will not be reversed if supported by substantial evidence." *Falkner v. Stubbs*, 121 So. 3d 899, 901 (¶8) (Miss. 2013) (citation

3

omitted). We have held that "[t]he existence of a contract and its terms are questions of fact to be resolved by the fact-finder, whether a jury, or a judge in a bench[]trial." *Ammons v. Cordova Floors Inc.*, 904 So. 2d 185, 188 (¶13) (Miss. Ct. App. 2005) (citation omitted).

¶8. Here, the circuit court determined that the 2007 contract was void, but that the extended 2002 contract constituted a valid and binding contract between the parties. The circuit court further concluded that the contractual provision regarding severance pay was applicable to the circumstances. The hospital argues that the circuit court erred in finding that the 2002 contract was valid. The hospital also argues that the circuit court's alternative theory regarding equitable estoppel was erroneously applied.

¶9. In its judgment, the circuit court relied on information contained in the board's minutes in finding that the 2002 contract was valid. As noted by the circuit court, it is well settled that "boards . . . speak only through their minutes and their actions are evidenced solely by entries on the minutes." *Thomspon v. Jones Cnty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977) (citations omitted). The board's minutes indicate that the agreement to employ Griffin for the 2007 calendar year was based on the board's understanding that it would be a one-year extension of the existing 2002 contract instead of the creation of a new contract. Specifically, on November 21, 2006, the minutes reflect the following:

> Debra Griffin reported that she . . . [has] resigned. . . . Debra Griffin's last day is December 31, 2006.

> Debra Griffin was asked to stay on as [h]ospital [a]dministrator until the transition was complete. Debra Griffin agreed to do so; thus, her resignation was rescinded.

> Upon motion by Mr. Clarence Reed, with second by Mr. Ralph Sewell, the

4

members of the [b]oard . . . voted to extend her contract for one year.

¶10. The 2007 contract was signed by the board's then-chairperson and Griffin one day later on November 22, 2006. Griffin was present at the next board meeting on December 12, 2006. No mention was made of the 2007 contract then or during the board meeting in January 2007. Although the 2007 contract was signed by the board's then-chairperson, there is no mention in the minutes of any authority being given to the then-chairperson to act on behalf of the board. However, at the December 12, 2006 board meeting, a motion to reconsider "the year extension of Ms. Griffin's contract and employ her month by month" was proposed and rejected. It was made abundantly clear that only a one-year extension of the existing 2002 contract was available to Griffin. Griffin continued working as usual through January 9, 2007, when she received notice of her termination.

¶11. The circuit court's conclusion that the 2007 contract was legally null but that a one-year extension of the 2002 contract was valid is supported by the record. The circuit court properly relied on the board's minutes in its analysis. As stated above, it appears that the board never agreed to be bound to the 2007 contract and that the board's then-chairperson was the only board member with any knowledge that the 2007 contract even existed. Rather, the board's minutes indicate that the board only expressly agreed to commit to a one-year extension of Griffin's existing 2002 contract. The minutes further reflect that Griffin agreed to the arrangement by rescinding her letter of resignation and continuing to come to work until her termination.

¶12. Although the contract in its entirety was not read into the board's minutes, both parties

5

were aware of the requirements of the contract, particularly with respect to the severance-pay provision. "[A] contract with a public board may be enforced if enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties . . . ." *Id*. at 797. The 2002 contract, including the severance-pay provision, had been binding and effective for five consecutive years prior to the November 2006 board meeting. It is without question that the board and Griffin were each aware of respective liabilities and obligations under the terms of the contract.

¶13. With respect to severance pay, the contract held the following:

> After such termination . . . the [h]ospital shall continue to pay [the] [a]dministrator her then monthly salary and benefits for the month in which her duties were terminated and for twelve (12) consecutive months thereafter as an agreed upon termination payment, except the [a]dministrator shall not receive any termination payment in the case of termination for cause due to [(i)] the conviction of the [a]dministrator for a felony crime, (ii) death of the [a]dministrator, or (iii) the resignation of the [a]dministrator.

The 2007 contract only differed in adding that severance pay should be made for any remaining months left on the contract instead of twelve consecutive months, since the contract was only for twelve months total.

¶14. The circuit court determined that Griffin's termination did not fall within one of the three provisions listed above for excluding severance pay. This is supported by the record. Accordingly, enforcement of the severance-pay provision was proper. This issue is without merit.

¶15. Having found that the circuit court did not err in its determination that the extended 2002 contract was valid and that enforcement of the severance-pay provision was proper, the

6

hospital's argument regarding the circuit court's alternative theory of equitable estoppel is

moot.

¶16.     **THE JUDGMENT OF THE HUMPHREYS COUNTY CIRCUIT COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.  IRVING, P.J., AND WILSON, J., NOT PARTICIPATING.**