# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00885-COA

**SARAH HODNETT, INDIVIDUALLY AND AS
TRUSTEE OF THE HODNETT LAND TRUST,
AND BANK OF ANGUILLA, A MISSISSIPPI
BANKING CORPORATION**

APPELLANTS

**v.**

**TIM HODNETT**

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2016 |
| TRIAL JUDGE: | HON. HOLLIS MCGEHEE |
| COURT FROM WHICH APPEALED: | SHARKEY COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | OLIVER E. DIAZ JR. |
| | DAVID NEIL MCCARTY |
| | BENJAMIN MCRAE WATSON |
| | JOHN C. HENEGAN |
| ATTORNEY FOR APPELLEE: | PHILIP MANSOUR JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED: 04/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Tim Hodnett sued his sister, Sarah Hodnett, to set aside a deed to the family farm from

their mother to a revocable trust.  The trust named Sarah as the sole beneficiary upon her

mother's death.  The chancery court found that Sarah, who had acted as her parents' attorney

for many years and had prepared all of the various instruments involved in these transactions,

had been in a confidential relationship with her mother when the deed was executed, raising

the presumption that it was the product of undue influence.  Sarah failed to rebut that

presumption by clear and convincing evidence, and thus the chancellor set aside the deed.

¶2. On appeal, Sarah contends that Tim lacked standing to challenge the deed, that the statute of limitations had run at the time this suit was filed, and that the chancery court employed an incorrect legal standard in reaching its finding of a confidential relationship. The Bank of Anguilla also appeals, challenging the trial court's conclusion that Tim's claim had priority over some of the Bank's security interests in the deeded property, which were acquired by the Bank after a lis pendens was filed. We affirm the chancery court's judgment in its entirety.

## STANDARD OF REVIEW

¶3. A chancellor's factual findings will not be reversed unless they are manifestly wrong or clearly erroneous. *Paw Paw Island Land Co. v. Issaquena & Warren Ctys. Land Co.*, 51 So. 3d 916, 923 (¶26) (Miss. 2010). However, a chancellor's legal conclusions are reviewed de novo. *Id.*

## DISCUSSION

### 1. Standing

¶4. Sarah contends that Tim lacks an interest in the deeded property and therefore does not have standing to pursue any claims relating to its disposition.

¶5. "In Mississippi, parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law." *In re City of Biloxi*, 113 So. 3d 565, 570 (¶13)

2

(Miss. 2013) (citation and internal quotation marks omitted). "A party's claim must be grounded in some legal right recognized by law, whether by statute or by common law and that party must be able to show that it has a present, existent actionable title or interest." *Id.* (citation and internal quotation marks omitted).

¶6.     It is undisputed that Tim is one of his mother's heirs at law. *See* Miss. Code Ann. § 91-1-3 (Rev. 2013). If the conveyance of the property from his mother to the trust is set aside, Tim presumptively stands to inherit a child's share of the property. *Id.* He clearly has standing to challenge the transfer on the basis of undue influence.

### 2.     Statute of Limitations

¶7.     Tim filed suit shortly after his mother's death, but Sarah and the Bank point out that this was more than three years after the deed transferring the property to the Trust was executed. Both assert that the three-year "catch all" statute of limitations bars this suit, though they offer little argument as to why.

¶8.     It is apparent to us that the applicable statute of limitations is actually ten years under Mississippi Code Annotated sections 15-1-7 (Rev. 2012) and 15-1-9 (Rev. 2012), for actions to recover land. *See In re Estate of Reid*, 825 So. 2d 1, 6 (¶¶16-19) (Miss. 2002); *see also* Miss. Code Ann. § 15-1-49 (Rev. 2012). Sarah cites *O'Neal Steel Inc. v. Millette*, 797 So. 2d 869, 872-75 (¶¶10-20) (Miss. 2001), for the proposition that a possessory interest in the land is required for the ten-year statute of limitations to apply. That is an accurate statement of the law, but *Millette* involved a judgment creditor seeking to set aside an allegedly

3

fraudulent conveyance, and the creditor sought "neither title nor possession of the property." *See id.* at 874 (¶15). Here, Tim is an heir at law who seeks a child's share of the real property deeded away by his mother, allegedly as a result of undue influence. On this point, *Estate of Reid* is illustrative: Reid's potential heir at law brought an undue influence suit to set aside her transfers of real property to Reid's adopted son, including a deed that had been executed and recorded before her death. The Mississippi Supreme Court held that the ten-year statute of limitations applied. *See Estate of Reid*, 825 So. 2d at 6 (¶¶16-19).

¶9. The statute of limitations does not bar this suit.

### 3. Laches

¶10. Sarah also contends that Tim's claim should be barred by laches, but laches is precluded by our prior decision on the statute of limitations issue. "A delay short of the statutory period of limitations does not bar recovery." *Greenlee v. Mitchell*, 607 So. 2d 97, 111 (Miss. 1992). "The doctrine of laches is simply inapplicable where a claim has not yet been barred by the applicable statute of limitations." *Id.*

### 4. Venue

¶11. Next, we address Sarah's contention that the only proper venue for this suit was in Humphreys County, where the farm is located. She points to Mississippi Code Annotated section 11-5-1 (Rev. 2014), which provides in relevant part that "[s]uits to confirm title to real estate, and suits to cancel clouds or remove doubts therefrom, shall be brought in the county where the land, or some part thereof, is situated."

¶12. Sarah concedes, however, the venue issue was never pursued to a ruling in the chancery court. This operates as a waiver of the issue except in those rare cases where venue is also jurisdictional. "It is an appellant's duty to secure a ruling on a motion before the failure to grant it can be contested on appeal." *Ford v. Magnolia Franchise Holdings Inc.*, 112 So. 3d 467, 471 (¶14) (Miss. Ct. App. 2013).

¶13. Aware of the potential waiver, Sarah contends that the particular defect she alleges is jurisdictional and therefore can be raised for the first time on appeal. She cites *Donald v. Amoco Production Company*, 735 So. 2d 161, 181-82 (¶¶73-78) (Miss. 1999), which involved the local action doctrine. But *Donald* was founded on section 11-11-3 of the Mississippi Code, which at that time expressly limited circuit courts' jurisdiction over "actions of trespass on land, ejectment and actions for the statutory penalty for cutting and boxing trees" to the county in which the affected land was situated. *Donald*, 735 So. 2d at 181 (¶73) (quoting Miss. Code Ann. § 11-11-3 (Supp. 1998)). The court noted that in Mississippi the local action doctrine was limited to that statute and those causes of action. *See id.* at (¶74) (quoting *City of Jackson v. Wallace*, 189 Miss. 252, 263, 196 So. 223, 226 (1940) (McGowen, J., dissenting)). "The only local actions with us are ejectment and trespass on land." *Id.* The United States Court of Appeals for the Fifth Circuit has also noted that "Mississippi has rejected the common law local action doctrine" and that the statute "alone determines whether a court can exercise jurisdiction over a 'local' cause of action." *Trust Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1149-50 (5th Cir. 1992).

5

¶14. Sarah also cites *Belk v. State Department of Public Welfare*, 473 So. 2d 447, 449 (Miss. 1985), where the supreme court stated in dicta that unspecified "actions dealing with property" were an exception to the general rule that challenges to venue can be waived. But this statement appears to just refer to our limited, statutory implementation of the local action doctrine previously discussed.

¶15. In *Ravesies v. Martin*, 190 Miss. 92, 99-101, 199 So. 282, 284-85 (1940), the Mississippi Supreme Court directly addressed the question of whether venue was jurisdictional in suits to confirm title. It held that "[t]he jurisdiction of the chancery court to cancel a claim as a cloud upon the title of the real owner of any real estate is conferred by Section 404 of the Code of 1930, and this statute does not prescribe that jurisdiction of the subject matter shall be dependent upon the land being situated in the county where the suit is filed." Section 404 of the Code of 1930 is currently codified as Mississippi Code Annotated section 11-17-31 (Rev. 2004) and appears to be unchanged since the *Ravesies* decision in 1940. Sarah dismisses *Ravesies* as an "ancient case," but it appears to be controlling precedent nonetheless.

¶16. We conclude that venue was not jurisdictional in this case, and Sarah waived any objection to the suit being heard in Sharkey County.

### 5. Presumption of Undue Influence

¶17. Finally, Sarah challenges the chancery court's finding that there was a presumption of undue influence in various transfers related to the property because of a confidential

6

relationship between Sarah and her mother and father. *See generally Madden v. Rhodes*, 626 So. 2d 608, 618-19 (Miss. 1993). Sarah does not challenge the chancellor's finding that she failed to rebut that presumption.

¶18. Sarah's argument on appeal is based on the Mississippi Rules of Professional Conduct, specifically Rule 1.8(c), which states that "[a] lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee." She points out that the chancellor, when announcing his decision from the bench, was very critical of Sarah's drafting the instruments that ultimately transferred her parents' property to her and appeared to assume her actions were a violation of the Rules of Professional Conduct.

¶19. First of all, it is not clear that Sarah complied with Rule 1.8(c). On its face, the rule does not prohibit an attorney from preparing an instrument effecting a gift from a client to the attorney when the attorney and client are related, but the comment to the rule notes the caveat that such gifts are permissible only "if the transaction meets general standards of fairness." The Supreme Court of South Dakota, considering a similar case, held that "Rule 1.8(c) cannot be used to excuse substantial gifts which are facially disproportionate to gifts made to other relatives in the same class." *In re Discipline of Mattson*, 651 N.W.2d 278, 288 (¶50) (S.D. 2002) (citing Restatement (Third) of the Law Governing Lawyers § 127(1) (1998)). The Supreme Court of Wisconsin similarly held that the gift must be "reasonable

7

and natural under the circumstances or no more than would be received by law." *State v. Horan*, 123 N.W.2d 488, 492 (Wis. 1963). The California Supreme Court has opined that "[t]here is nothing improper in an attorney's drawing wills for his family or for relatives, provided the gift to him is reasonable under the circumstances." *Magee v. State Bar of Cal.*, 374 P.2d 807, 845 (Cal. 1962).

¶20. We also note that Rule 1.8(c) is part of the Mississippi Rules of Professional Conduct, not substantive law. It is well established in Mississippi that an attorney-client relationship is a per se confidential one. *See Hitt v. Terry*, 92 Miss. 671, 710-11, 46 So. 829, 840 (1908) ("[T]he law presumes deeds or wills made by the client to the attorney . . . to be prima facie void, and therefore requires such beneficiary under the will to show the absence of undue influence . . . ."); *Meek v. Perry*, 36 Miss. 190, 245 (1858) ("[T]he law, upon grounds of great public policy, utility, or necessity, presumes the existence of undue influence from the known confidential relations of . . . client and attorney . . . ." (emphasis and internal quotation marks omitted)); *see also Lowrey v. Will of Smith*, 543 So. 2d 1155, 1160-62 (Miss. 1989); *Estate of McRae v. Watkins*, 522 So. 2d 731, 737-38 (Miss. 1988). As the supreme court stated in *Estate of McRae*:

> [T]he law declares that when there is a fiduciary or confidential relation, and there is a gift or conveyance of dubious consideration from the subservient to the dominant party, it is presumed void. This is not because it is certain the transaction was unfair; to the contrary, it is because the Court *cannot be certain it was fair*. As stated in *Meek v. Perry*, 36 Miss. at 246, "if the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases, it will lend its assistance to fraud." Further, this is a "policy of the law, founded on the safety and convenience of mankind . . . preventing

8

acts of bounty." And, the Court will not permit such a transaction to stand, ". . . though the transaction may be not only free from fraud, but the most moral in its nature." *Id.* at 247. "The rule of law in these cases is not a rule of inference, from testimony, but a rule of protection, as expedient for the general good." *Id.* at 244.

*Id.* at 737 (emphasis omitted in part).

¶21. The challenged transfers are inter vivos, and for inter vivos gifts where there is a confidential relationship between the donor and the donee, a presumption of undue influence arises even without a showing that the recipient played an active part in the preparation or execution of the instrument. *See In re Will of Moses*, 227 So. 2d 829, 835 (Miss. 1969).

¶22. We are aware of no Mississippi authority making an exception to this general rule for an attorney who is a relative of the grantor, but we recognize that there are solid reasons for such an exception to exist, and other states have allowed attorneys to prepare wills and deeds for family members to the attorney's benefit without an automatic presumption of undue influence. *See, e.g.*, *Krischbaum v. Dillon*, 567 N.E.2d 1291, 1296-97 (Ohio 1991). But if we were to adopt such an exception, it would be subject to the same limitations as the ethical rule. It is true that the purpose of the Rules of Professional Conduct is generally to provide for "lawyer's self-assessment" and "structure for regulating conduct through disciplinary agencies." *See Turner v. Turner*, 73 So. 3d 576, 580 (¶17) (Miss. Ct. App. 2011). But based on our survey of the law, it is clear that courts recognize a great overlap between ethical rules and the substantive law when evaluating gifts to an attorney-draftsman. While *Horan* was an attorney discipline case, the Wisconsin Supreme Court noted that the same standard

9

applied to undue influence: "if the attorney acted as draftsman of the will and there are any circumstances either because of preferential treatment in relationship to others or if the bequest is more than a token or modest bequest from a personal friend or the attorney suggested the bequest to himself or to a member of his family, or any other somewhat persuasive circumstances, the inference [of undue influence] arises . . . ." *Horan*, 123 N.W.2d at 492. Even if we were to accept that the chancellor erred in not recognizing a general exception to a per se presumption of undue influence when attorneys draft instruments for relatives, it is apparent to us that any error as to the legal standard would have been harmless given the particular facts of this case.

¶23. The nature of Sarah's relationship with her parents clearly supports the chancellor's finding of a confidential relationship, even if there was no per se rule based on her status as their attorney. While there was little evidence of incapacity or physical dependency of her parents, a confidential relationship can be founded on trust just as it can upon physical weakness or dependence. *See, e.g.*, *Norris v. Norris*, 498 So. 2d 809, 812 (Miss. 1986). The proof showed that Sarah did not just prepare the deeds, wills, and trust documents that resulted in her inheriting their entire estate; she had a longstanding attorney-client relationship with both of her parents and was also the attorney-in-fact for both. Sarah executed the deed from her father to her mother on his behalf using the power of attorney, at a time when he was dying of cancer. She also admitted she had not advised her parents to seek advice from outside counsel, at any point, and there is no evidence her parents ever

received such outside counsel. The chancellor further found that Sarah had concealed the terms of the trust—if not its existence—from her brother, whom she had previously represented as an attorney. The ultimate result of this series of transactions was that Sarah received her parents' entire estate, to the exclusion of her brother.

¶24. Attorneys should be held to a higher standard than laymen, to protect both the general good and integrity and reputation of the legal profession. *See Estate of McRae*, 522 So. 2d at 737; *Lowry*, 543 So. 2d at 1161-62. We find no error in the chancellor's findings regarding the presumption of undue influence.

### 6. Priority of Liens

¶25. Finally, the Bank contends that the chancellor erred in finding that the Bank's liens acquired after the filing of the lis pendens in this suit did not have priority over Tim's claim. The Bank points to the former Mississippi Code Annotated section 91-9-115 (2013), since repealed, which was in effect at the relevant time and provided:

> With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust powers and their proper exercise by the trustee may be assumed without inquiry. The third person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and a third person, without actual knowledge that the trustee is exceeding his powers or improperly exercising them, is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise. A third person is not bound to assure the proper application of trust assets paid or delivered to the trustee.

¶26. We find no merit to this contention. The statute spoke to a third party's reliance on the "existence of trust power[s] and their proper exercise by the trustee"; it "abolish[ed] the

11

common law broad duty of inquiry of third parties dealing with a trustee." *Franklin Credit Mgmt. Corp. v. Hanney*, 262 P.3d 406, 410-11 (Utah Ct. App. 2011) (considering Utah's identical analogue to the Mississippi statute). The judgment below set aside the deed to the trust; the issue was not the exercise of trust powers by the trustee but whether the trust actually owned the property in the first place. The statute simply has no application to this judgment.

¶27. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**