# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00544-COA

**PATSY B. WHITE**                                                                      **APPELLANT**

**v.**

**WILLIAM T. WHITE D/B/A ROYERS ESTATES INC.**                                    **APPELLEE**

DATE OF JUDGMENT:                03/23/2018
TRIAL JUDGE:                     HON. SUSAN RHEA SHELDON
COURT FROM WHICH APPEALED:       PIKE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          PAUL E. ROGERS
ATTORNEY FOR APPELLEE:           WILLIAM T. WHITE (PRO SE)
NATURE OF THE CASE:              CIVIL - REAL PROPERTY
DISPOSITION:                     AFFIRMED - 05/21/2019
MOTION FOR REHEARING FILED:      05/31/2019 - GRANTED; AFFIRMED IN
                                 PART, REVERSED AND RENDERED IN
                                 PART, AND REMANDED - 02/04/2020
MANDATE ISSUED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

## MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing filed by Patsy White is granted. The previous opinions are withdrawn, and these opinions are substituted in their place.

¶2.     This appeal arises from a son's refusal to transfer title to real property to his mother after agreeing to do so in return for her making payments on the deed of trust. The Pike County Chancery Court dismissed the mother's second amended complaint, determining that her breach-of-contract claim against her son was barred by the Statute of Frauds and untimely, among other reasons.

¶3.    We affirm that the Statute of Frauds bars the breach-of-contract claim.  We reverse and remand because a constructive trust may provide a remedy for the mother.  We also reverse and render that the applicable statutory limitations periods have not passed.

## FACTS AND PROCEDURAL HISTORY

¶4.    In exchange for a deed of trust valued at $56,375, Royers Estates obtained about 22.5 acres of property in Pike County.  The deed of trust was executed by William White, the owner of Royers Estates, and was security for a promissory note requiring him to pay the current landowner $882 per month until paid in full.

¶5.    William faltered on the payments and asked for help from his family.  Patsy, his mother, agreed to take over the payments in order to avoid foreclosure.  Patsy later claimed that in exchange for making the payments, William verbally agreed to transfer his interest in the property to her.  The mother and son did not reduce this agreement to writing.  Patsy also took over payments for other properties under the same condition.

¶6.    Patsy completed the payments. When she attempted to sell the Pike County land a few months after the payments were completed, she discovered that title had never been transferred to her.  Her son had broken his promise.

¶7.    So the mother filed a complaint for quiet title, injunction, and damages against her son.  In essence, Patsy sought specific performance of the verbal agreement.  Additionally, she asked for damages if the title defect could not be cured and for William to be prevented from transferring his interests in the property to anyone else.  Patsy amended her complaint one month later to include the other properties she had agreed to pay for in return for title.

2

¶8.     William filed an answer along with a motion to dismiss. Following a hearing, the chancery court allowed Patsy to again amend her complaint. The second amended complaint included a claim for breach of contract, as well as mandatory injunctive relief and the imposition of a constructive trust. Patsy also requested "that she be granted a lien against the subject property to secure said lien."

¶9.     William again moved to dismiss, asserting that the Statute of Frauds and a statute of limitations barred Patsy's breach-of-contract claim. The chancery court granted William's motion to dismiss without specifying the basis for the dismissal. Patsy sought reconsideration, arguing the court's order failed to explain why the case was dismissed.

¶10.    The chancery court then issued findings of fact and conclusions of law denying Patsy's motion for reconsideration. In that order, the court found that Patsy's breach-of-contract claim was barred by both the Statute of Frauds and the statute of limitations. Additionally, the court determined that Patsy failed to meet the requirements for injunctive relief and "fail[ed] to plead any of the requisite elements for the imposition of a constructive trust."

¶11.    Patsy appeals, arguing that (1) her claim does not violate the Statute of Frauds; (2) her claim is not barred by the statute of limitations; (3) the chancery court wrongly dismissed her request for mandatory injunctive relief; (4) the chancery court wrongly denied the imposition of a constructive trust; and (5) the chancery court failed to grant her a lien against the subject property.

**STANDARD OF REVIEW**

3

¶12. "When considering a motion to dismiss, this Court's standard of review is de novo." *Scaggs v. GPCH-GP Inc.*, 931 So. 2d 1274, 1275 (¶6) (Miss. 2006). "[T]he allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id.*

## DISCUSSION

### I. The Statute of Frauds expressly bars Patsy's claim.

¶13. Patsy first argues that her second amended complaint should not have fallen prey to the Statute of Frauds. "The principal purpose of the Statute of Frauds is to require the contracting parties to reduce to writing the specific terms of their contract, especially an agreement affecting lands for more than one year, and thus to avoid dependence on the imperfect memory of the contracting parties, after the passage of time, as to what they actually agreed to some time in the past." *Sharpsburg Farms Inc. v. Williams*, 363 So. 2d 1350, 1354 (Miss. 1978) (citation omitted). The law expressly bars actions based on unwritten agreements for the sale of land. Miss. Code Ann. § 15-3-1(c) (Rev. 2012) ("An action shall not be brought whereby to charge a defendant or other party . . . upon any contracts for the sale of lands" except when "the promise or agreement" is "in writing, and signed by the party to be charged" or his agent.).

¶14. At the hearing for the motion to dismiss, counsel for Patsy strained to find a way out from under the Statute of Frauds, arguing that what was at stake was "clearly not a sale of land," and that not all agreements touching land are required to be in writing. *See, e.g.*,

4

*Allred v. Fairchild*, 785 So. 2d 1064, 1069 (¶12) (Miss. 2001) (explaining that although related to land, "brokerage commissions (such as real estate brokers' fees) are not subject to the statute of frauds" since they are not for the sale of the land itself).

¶15.   Yet Patsy did not file suit for a brokerage fee or non-land related relief. Instead, her second amended complaint specifically demanded her son convey the Pike County land to her, requesting the chancery court to "find Defendants to be in breach of the parties' agreement" and to "order Defendants to specifically perform their obligations under the parties' agreement *by transferring title to Plaintiff*." (Emphasis added).

¶16.   As a result, the chancery court correctly concluded that "[t]he obligation [Patsy] seeks to impose upon [William] is the conveyance of an interest in real property based on an alleged oral agreement." Taking the allegations in Patsy's second amended complaint to be true, she and William had an agreement for the conveyance of the Pike County land. But by the express language of the Statute of Frauds, a claim for relief of this type must be based upon a written and signed agreement. It is undisputed that there was no written agreement regarding William's promise to transfer title to Patsy upon full payment of the note and deed of trust. Accordingly, we affirm that Patsy's breach-of-contract claim is barred by the Statute of Frauds.

¶17.   Our straightforward application of the Statute of Frauds means two of Patsy's other assignments of error must also fail. Patsy requested mandatory equitable relief, seeking to force her son to deed the property to her via the injunctive powers of Mississippi Rule of Civil Procedure 65. As our Supreme Court has held, "under the equitable doctrine that

'equity follows the law,' courts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief." *In re Estate of Smith*, 891 So. 2d 811, 813 (¶5) (Miss. 2005). The chancery court properly denied the request for the injunction.

¶18. Similarly, Patsy demanded a lien against the Pike County property. "But an equitable lien is not appropriate to enforce a contract that otherwise fails to meet the requirements of the statute of frauds." *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 620-21 (¶36) (Miss. 2014). The chancery court's dismissal of this claim was proper.

## II. The remedy of a constructive trust is available.

¶19. Although the Statute of Frauds bars enforcing the mother's demand for title in the property, our law has long recognized an equitable solution to the exact scenario presented to us. In a request for alternative relief to receiving the land itself, Patsy sought a constructive trust.

¶20. "A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property." *Presbytery of St. Andrew v. First Presbyterian Church PCUSA of Starkville*, 240 So. 3d 399, 405 (¶27) (Miss. 2018). As the Supreme Court has held, this "is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." *McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶24) (Miss. 2000).

¶21. The remedy is broad:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission

6

of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Id*. "[E]xamples of wrongful conduct that may justify imposition of a constructive trust" include:

    (1) fraud, actual or constructive
    (2) duress
    (3) abuse of confidence
    (4) commission of wrong
    (5) any form of unconscionable conduct, artifice, concealment, or questionable means
    (6) any way against equity and good conscience.

*Joel v. Joel*, 43 So. 3d 424, 431 (¶24) (Miss. 2010).

¶22. In *Joel*, the Supreme Court emphasized the breadth of the remedy and its potential application to a variety of relationships, holding that "[w]hile a confidential relationship is sometimes required" to impose a constructive trust, "sometimes it is not." *Id*. at (¶23); *accord Saulsberry v. Saulsberry*, 223 Miss. 684, 690, 78 So. 2d 758, 760 (1955) (cautioning that trial courts should be "careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it").

¶23. There is a high burden for the party seeking the remedy since "[c]lear and convincing proof is necessary to establish a constructive trust." *McNeil*, 753 So. 2d at 1064 (¶25). It "is a question of law" whether this legal remedy should be applied "to the set of facts at hand." *Id*. at (¶26). As with any case involving an allegation of a confidential relationship, this remains a fact-intensive inquiry, and a conclusion can only be reached once a chancellor has taken proof on the existence of a confidential relationship. *Id*. at (¶27). The burden was

7

well-stated many years ago: "There must be conduct influential in producing the result, and but for which such result would not have occurred amounting, in the view of a court of equity, to fraud in order to save the case from the Statute of Frauds." *Lipe v. Souther*, 224 Miss. 473, 483, 80 So. 2d 471, 475 (1955).

¶24. In her second amended complaint, Patsy specifically asked for a constructive trust if the chancery court refused to honor the agreement for the transfer of land: "Should the Court find that the parties did not have an enforceable agreement for the transfer of title to the subject property, Plaintiff prays that the Court will impose a constructive trust and compel transfer of title to the subject property to Plaintiff." Patsy further alleged that she "paid the note owed . . . and but for Plaintiff doing so, the property would have been foreclosed and Defendants would have lost their title to the property." As a result, she alleged that "[a] constructive trust is necessary in this matter to prevent unjust enrichment of Defendants who unfairly hold title to the subject property as a result of their wrongful refusal to convey title to Plaintiff."

¶25. In setting out its findings of fact and conclusions of law supporting the dismissal, the chancery court actually agreed that Patsy had "paid the remaining balance due on the subject property in full" and that William "subsequently refused Plaintiff's requests to transfer title to the subject property to her." Nonetheless, the chancery court refused to allow Patsy the remedy of a constructive trust, in part because the chancery court viewed the payments as voluntary.

¶26. On these facts, this case echoes one where two grandchildren "were approached by

8

their grandparents and urged to invest money, which they had previously been unaware they possessed, into the construction and renovation of their grandparent's house." *In re Estate of Horrigan*, 757 So. 2d 165, 171 (¶27) (Miss. 1999). In return, the two grandchildren were promised "they would be willed the entire property after both [their grandfather] and his wife died." *Id*. at 167 (¶2). Of course, the grandchildren were not given the property upon his passing. *Id*.

¶27. But the grandchildren were not stranded without a remedy. In addition to applying equitable estoppel, the Supreme Court held that a constructive trust should be imposed. *Id*. at 170-71 (¶¶21, 28). Because the grandchildren relied on the agreement from their grandfather, they "invested a majority of their savings into the renovation." *Id*. at 171 (¶27). "To refuse [the grandchildren] the benefits of the agreement would unjustly enrich" the remaining landowner. *Id*. at (¶28). The Court continued, "While this Court is unable to grant specific performance in these circumstances," because the Statute of Frauds barred recovery, "we do hold that as a result of the [grandfather's] conduct, a constructive trust has been created in favor of [the grandchildren] which will continue to exist until such time as they are repaid the [cost of the renovation] plus interest from the date of last payment." *Id*.

¶28. In *Horrigan*, there was ample proof at trial for purposes of appellate review. In the instant case, the chancery court dismissed the mother's claims before discovery. As our standard of review guides us, a motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Scaggs*, 931 So. 2d at 1275 (¶6). A constructive trust is an available remedy for just

the type of scenario Patsy has alleged. The standard of review requires us to take "the well-pleaded factual allegations of the complaint as true . . . ." *State v. Quitman Cty.*, 807 So. 2d 401, 406 (¶16) (Miss. 2001). Although Patsy's factual allegations may be in dispute, at this stage of the litigation they must be taken as true. For these reasons it was premature for the chancery court to dismiss the case in its entirety before allowing discovery and the taking of proof on these fact-intensive issues. A constructive trust is a remedy for loss when a claim falls to the Statute of Frauds, and the merits of the claim should be developed in discovery. Whether this case will ultimately result in the creation of a constructive trust is a remedy within the chancery court's authority to grant or deny based upon proof.

¶29. The chancery court's dismissal of the remedy was based in part upon a determination that the payments from Patsy to William were voluntary. The "voluntary payment doctrine is an affirmative defense[.]" *A1 Fire Sprinkler Contractors LLC v. B.W. Sullivan Bldg. Contractor Inc.*, 217 So. 3d 731, 734 (¶7) (Miss. Ct. App. 2017). "A payment may not be considered voluntary unless the payor had full knowledge of all the facts which would render the payment voluntary." *Colony Ins. Co. v. First Specialty Ins. Corp.*, 262 So. 3d 1128, 1132 (¶9) (Miss. 2019) (internal quotation mark omitted). "To determine whether payments are made on a voluntary basis, this Court looks at the facts of each particular case." *Id.*

¶30. The chancery court found the payments were voluntary based upon its view of the second amended complaint and its taking of judicial notice of another dispute between the mother and son. Patsy, of course, hotly disputes that the payments were voluntary or that her second amended complaint conceded this; she argues that in any event she only made the

10

payments to William upon the belief she would receive his title to the land.

¶31. "The burden of proving an affirmative defense lies upon the party who relies upon that defense." *Jenkins v. Pensacola Health Tr. Inc.*, 933 So. 2d 923, 927 (¶14) (Miss. 2006). Because the defense is only William's burden to bear, it was not a failure of pleading by Patsy. It was premature at the motion-to-dismiss stage, based merely upon the allegations of the second amended complaint, to find the proof established voluntary payments. The chancery court may ultimately conclude that the payments were indeed voluntary, but that affirmative defense must be fleshed out in discovery where it can be addressed at the summary judgment stage or trial. At that point, it will remain William's burden since at "summary judgment, as at trial, the burden of proving [an affirmative defense] falls on the party asserting it[.]" *Inland Family Practice Ctr. LLC v. Anderson*, 256 So. 3d 586, 591 (¶17) (Miss. 2018).

¶32. The chancery court also based its dismissal in part on a finding that Patsy failed to properly plead relief, ruling that "[i]n this case, the Second Amended Complaint fails to plead any of the requisite elements for the imposition of a constructive trust." But based on our rules in Mississippi, complaints are only to be "short and plain." M.R.C.P. 8(a)(1). In Mississippi, "all that is needed in a complaint is a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment." *Herrin v. Perkins*, 282 So. 3d 727, 733 (¶22) (Miss. Ct. App. 2019); *cf.* M.R.C.P. 9(b) (requiring heightened pleading standards in complaints detailing "the circumstances constituting fraud or mistake"). The invocation of the language regarding a constructive trust was sufficient to put William

11

on notice and to move the action beyond the motion-to-dismiss stage.

¶33.   Our decision recognizes two longstanding principles: first, "if there is no adequate remedy at law, equity will step in." *Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 99 (¶31) (Miss. Ct. App. 2006). Second, "[e]quity will not suffer a wrong without a remedy . . . ." *Emmons v. Emmons*, 217 Miss. 594, 600, 64 So. 2d 753, 755 (1953). For this reason we reverse the chancery court's dismissal of the request for a constructive trust, while recognizing it may ultimately conclude the proof does not warrant such a remedy.

### III.    The applicable statutory limitations periods have not run.

¶34.   The chancery court further ruled that the second amended complaint was untimely. Because this case was dismissed under Mississippi Rule of Civil Procedure 12(b)(6), we use de novo review, which is further applicable to a question of law like the applicability of a statute of limitations. *See Estate of Puckett v. Clement*, 238 So. 3d 1139, 1144 (¶9) (Miss. 2018).

¶35.   In Mississippi there is an express ten-year statute of limitations governing actions to recover land. Miss. Code Ann. § 15-1-7 (Rev. 2012) ("A person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued . . . ."). The limitations period begins to run at the time the person first has "the right to make the entry." *Id*. A separate sibling statute decrees that "[a] person claiming land in equity may not bring suit to recover the same except within the period during which, by virtue of Section 15-1-7, he might have made an entry or brought an action to recover the same, if he he had been entitled

12

at law to such an estate, interest, or right in or to the same as he shall claim therein in equity." Miss. Code. Ann. § 15-1-9 (Rev. 2012). Unlike section 15-1-7, this statute has an express discovery rule included, allowing the time for suit "to have first accrued at and not before the time at which the fraud shall, or, with reasonable diligence might, have been first known or discovered." *Id*.

¶36. Generally speaking, a ten-year statute of limitations will apply when a suit is based on the recovery of land, regardless if the action is disguised by the language of contract, fraud, or tort. *See Lott v. Saulters*, 133 So. 3d 794, 799-800 (¶¶7, 10) (Miss. 2014) (holding that "where a plaintiff alleging a possessory interest in the land brings an action to clear title or to recover land obtained by fraudulent conveyance, that action is governed by the ten-year statute of limitations," and explaining it had even "twice applied the ten-year statute of limitations in cases where fraud was alleged in an action to recover possession of real estate"); *see also Robinson v. Rhodes*, 236 So. 2d 746, 749 (Miss. 1970) ("A suit to cancel an oil, gas and mineral deed on the ground that the deed is invalid for fraud, misrepresentation or other cause is a suit to recover land within the meaning of the [ten-year] statute[] of limitations."); *Conley v. Wright*, 193 So. 3d 663, 666 (¶13) (Miss. Ct. App. 2016) (trial court erred in applying three-year statute to an action to recover land, though the error was harmless because the action accrued more than ten years before suit was filed); *Daughtrey v. Allred*, 22 So. 3d 1253, 1267 (¶36) (Miss. Ct. App. 2009) (ten-year statute applied in a dispute over mineral rights).

¶37. Of import to this case, there is also a ten-year statute of limitations for an action for

a constructive trust. *See Manning v. Perry*, 242 So. 3d 972, 977 (¶21) (Miss. Ct. App. 2017) (citing Miss. Code Ann. § 15-1-39 (Rev. 2012) ("Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . . ."). Therefore there are at least three separate statutes of limitations that could apply to this case, all of which allow ten years' time before filing suit.

¶38.    In a similar case, this Court reversed a chancery court's application of the three-year statute of limitations. *Bryant v. Dent*, 270 So. 3d 976, 979 (¶14) (Miss. Ct. App. 2018). There, a possible heir of the decedent who was also administrator of the decedent's estate sought "possession of the real property deeded away by [the decedent], allegedly due to undue influence." *Id.* at (¶13). Because it was an action to recover land, we found sections 15-1-7 and 15-1-9 applicable, not the three-year statute of limitations. *Id.* at 978-79 (¶¶11-14).

¶39.    In dismissing this case as time-barred, the chancery court, like the chancery court in *Bryant*, cited to the "catchall" three-year statute. *See* Miss. Code Ann. § 15-1-49(1) (Rev. 2012). The chancery court found that the three-year statute of limitations applied to this case because it was based on a claim for breach of contract. *See Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1106 (¶8) (Miss. Ct. App. 2014) ("Causes of action for breach of contract are subject to the three-year statute of limitations . . . .").

¶40.    But the three-year statute of limitations explicitly states that it applies to "[a]ll actions *for which no other period of limitation is prescribed* . . . ." § 15-1-49(1) (emphasis added).

It provides a limitations period in the absence of an express statute. As set out above, actions to recover land have their own statute of limitations prescribed via section 15-1-7, suits seeking recovery of land in chancery are governed by section 15-1-9, and actions for a constructive trust have their own limitations period in section 15-1-39. The same conclusion in *Bryant* must be reached here. Because this case is undisputedly an action to recover land and for the imposition of a constructive trust, the proper statutes of limitations to be applied grant ten years of time, not three.

¶41. The original complaint in this dispute between mother and son was filed on July 21, 2014, so it automatically captures all conduct back until 2004. Patsy alleged she paid off the balance on the Pike County property in November 2013, but according to her second amended complaint, it was not until March 2014 when she "was in the process of selling the subject property when she learned that the title was never transferred into her name[.]" Yet the complaint also alleged that "[t]he title to the subject property *was supposed to have been transferred at the same time* as the other titles to the other properties[.]" (Emphasis added). This section directly referred to other property conveyances between the mother and son, which the chancery court found occurred in 2008 and 2009 based on exhibits to the first amended complaint.[1] Whether the statute began running in 2014 or 2008 does not require

[1] The trial court relied on these dates in conjunction with the three-year statute to find the case time-barred. But the court did not take into account Patsy's claim that she had only discovered the property was not conveyed to her when she tried to sell it, which invokes the discovery rule. "Application of the discovery rule is a fact-intensive process." *Huss v. Gayden*, 991 So. 2d 162, 166 (¶6) (Miss. 2008). Where it is in dispute when a party should have discovered the underlying harm, the relevant facts are best developed through discovery and reviewed at a summary judgment stage, not the preliminary level of a motion

dismissal since under the statutes of limitations applicable to this case, all of the facts are within the ten year period. As a matter of law, this case is not time-barred.

¶42. This conclusion is further supported by a recent case where a brother filed suit against his sister for the recovery of land. *Hodnett v. Hodnett*, 269 So. 3d 317, 319-20 (¶1) (Miss. Ct. App. 2018). Like in this case, the sister and the bank holding the note both argued "that the three-year 'catch all' statute of limitations bars this suit." *Id*. at 320 (¶7). We determined that "[i]t is apparent to us that the applicable statute of limitations is actually ten years under . . . section[s] 15-1-7 . . . and 15-1-9 . . . for actions to recover land." *Id*. at (¶8). Because this was well within the time-frame in which the brother filed suit, Judge Fair, writing for the unanimous Court, concluded that "[t]he statute of limitations does not bar this suit." *Id*. at 321 (¶9).

¶43. In accord with *Bryant*, *Hodnett*, and the applicable statutes of limitations, the chancery court's decision that the case is time-barred is reversed and rendered, as this case was timely filed.

**CONCLUSION**

¶44. We affirm that the chancery court correctly determined that the Statute of Frauds

---

to dismiss.

This is not true of all cases because there are those actions where a statute of limitations can be applied at the motion-to-dismiss stage. Interpreting the parallel federal rule, the Fifth Circuit has noted that "[a]lthough defenses are generally not the proper subject of Rule 12(b)(6) motions, certain affirmative defenses that clearly appear on the face of the plaintiff's complaint—most commonly that the statute of limitations has run—may properly be asserted in a Rule 12(b)(6) motion." *Songbyrd Inc. v. Bearsville Records Inc.*, 104 F.3d 773, 775 n.3 (5th Cir. 1997).

barred a suit for the recovery of land because there was no writing memorializing the agreement between the parties. We reverse and remand the finding that a constructive trust was not an available remedy, while acknowledging it ultimately may not be applied. Because a party is allowed ten years in which to file suit for the recovery of land, we reverse and render the trial court's determination that the statutory limitations period had passed.

¶45. **AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED.**

**WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. GREENLEE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McCARTY, J. J. WILSON, P.J., AND C. WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J.**

**GREENLEE, J., SPECIALLY CONCURRING:**

¶46. I specially concur.

¶47. As an imposed implied trust, a constructive trust may have a genesis in fraudulent behavior. The constructive trust urged by Patsy White in the case sub judice sounds in fraud. Mississippi Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud shall be stated with particularity." Such complaint will be dismissed upon a failure to sufficiently plead allegations of fraud. *State Indus. Inc. v. Hodges*, 919 So. 2d 943, 946 (¶5) (Miss. 2006), *distinguished by In re Estate of Hudson*, 962 So. 2d 90, 94 (¶19) (Miss. Ct. App. 2007). In her second amended complaint, and as noted by the majority opinion, White prayed for the imposition of a constructive trust: "A constructive trust is necessary in this matter to prevent unjust enrichment of defendants who

17

unfairly hold title to the subject property as a result of their wrongful refusal to convey title to Plaintiff." Though sounding in fraud, White failed to plead particular facts in her amended complaint justifying the need of a constructive trust or showing the existence of fraud. The chancery court noted White's failure to specifically plead in a subsequent order, which provided one basis for the chancery court to dismiss her constructive-trust claim. The majority opinion, however, finds that White met her constrained duty to plead with particularity. However, the importance of the heightened-pleading requirement in claims sounding in fraud remains. *See Howard v. Estate of Harper*, 947 So. 2d 854, 861 (¶20) (Miss. 2006) ("Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place, and contents of any false representations or conduct must be stated.").

¶48. As in this case, when fraud is the underlying basis of a constructive-trust claim, a shorter statute of limitations should be implicated rather than our general-limitations period for trusts. Miss. Code Ann. § 15-1-39 (Rev. 2012) ("Bills for relief, in case of the existence of a trust not cognizable by the courts of common law . . . shall be filed within ten years . . . ."). Evidence may deteriorate over time, which, in turn, would make it more difficult to elicit the truth and to decide the claims correctly. *See United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("[Statutes of limitations] protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."). This notion "rests on the premise" that the greater the length in

18

time between the alleged fraudulent event and the subsequent trial on the merits, "[the more vulnerable the respondent and the court may be] to spurious claims." Tyler T. Ochoa & Andre Wistrich, *The Puzzling Purposes of Statutes of Limitations*, 28 PAC. L.J. 453, 479 (1997).

¶49. Finally, the chancellor went beyond the record in this case. In its order denying White's motion for reconsideration, the chancellor noted,

> "The [c]ourt takes judicial notice of a previous case involving the parties in which the Chancery Court of Pike County considered the issue and expressly found that Plaintiff's payments to the secured creditors on Defendant's properties constituted compelling proof of the love and concern she had for Defendant (her son)."

(Citations and internal quotation marks omitted). Judicial notice is acceptable if properly taken, but resting a decision on other litigation without citation or reasoning as to why it is material and relevant denies an appellate court the ability to properly review its basis.

¶50. Notwithstanding the above, I recognize this Court is bound by precedent to apply the ten-year statute of limitations because under our caselaw, litigants are entitled to a ten-year limitations period when constructive trusts are pled. *E.g.*, *Wholey v. Cal-Maine Foods Inc.*, 530 So. 2d 136, 139 (Miss. 1988) (citing *Hook v. Bank of Leland*, 134 Miss. 185, 98 So. 594 (1924)) ("We have construed [section 15-1-39] to make the ten-year limitation applicable to both express and implied trusts."). Furthermore, because the majority opinion remands this case outlining the appropriate standard and procedure for its resolution, I now specially concur.

**McCARTY, J., JOINS THIS OPINION.**

19

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶51. I agree with the majority that Patsy's breach-of-contract claim is barred by the statute of frauds. However, I disagree with the majority's findings that (1) the applicable statutory limitations period has not passed and (2) the chancery court erred in dismissing Patsy's request for a constructive trust. I therefore respectfully concur in part and dissent in part.

¶52. "Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." *Johnston v. Parham*, 758 So. 2d 443, 445 (¶4) (Miss. Ct. App. 2000).

¶53. "When considering a motion to dismiss, this Court's standard of review is de novo." *Scaggs v. GPCH-GP Inc.*, 931 So. 2d 1274, 1275 (¶6) (Miss. 2006). "[T]he allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id*.

### I. Statute of Limitations

¶54. Patsy claims that William breached their verbal contract when he failed to transfer title to the subject property to her in exchange for her monthly payments under the deed of trust. According to Patsy, William breached the contract by failing to transfer title to the subject property at or around the same time he transferred title to the other properties. The record shows that title to the other properties was transferred on December 16, 2008, and June 16 and 17, 2009.

¶55. Mississippi Code Annotated section 15-1-49(1) (Rev. 2012) provides a three-year statute of limitations for a breach-of-contract claim. *See Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1106 (¶8) (Miss. Ct. App. 2014). Subsection two of section 15-1-49 states: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2). Patsy asserts that she first learned of William's failure to transfer title to the subject property in March 2014. Thus, Patsy claims that the three-year limitations period should not begin until March 2014. However, in her second amended complaint, Patsy acknowledged that title to the subject property was "supposed to have been transferred" at the same time as the other properties. As noted by the chancery court, "[t]he original complaint in this action was filed on July 21, 2014, more than three years after the latest of the transfer dates above (June 17, 2009)."

¶56. I find that Patsy should have discovered the failure to transfer title long before the three-year limitations period expired. Reasonable diligence would have revealed the title defect before her breach-of-contract claim became barred. I therefore find that because Patsy failed to timely pursue her breach-of-contract claim, the claim is barred under section 15-1-49.

## II. Injunctive Relief

¶57. In her second amended complaint, Patsy sought mandatory injunctive relief, specifically, an order compelling William to deed the subject property to her. However, as

the chancery court noted, the second amended complaint "do[es] not meet the requirements for obtaining injunctive relief under [Mississippi Rule of Civil Procedure] 65" and "fails to allege any facts that would support a request for mandatory injunctive relief." Instead, Patsy simply requested that the chancery court "order [William] to specifically perform [his] obligation under the parties' agreement by transferring title to [Patsy] . . . ." As the chancery court properly determined, there was no enforceable agreement between the parties. I therefore find that the chancery court properly dismissed the request for mandatory injunctive relief.

### III. Constructive Trust

¶58. Patsy further sought the imposition of a constructive trust. "Constructive trusts are created for the purpose of preventing unjust enrichment, whereby one unfairly holding a property interest may be compelled to convey that interest to whom it justly belongs." *Griffin v. Armana*, 687 So. 2d 1188, 1195 (Miss. 1996). The supreme court has defined a constructive trusts as follows:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*In re Estate of Parker*, 13 So. 3d 877, 879-80 (¶7) (Miss. Ct. App. 2009) (quoting *Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990)). While we review the existence of a constructive trust de novo, "[t]he party advocating a constructive trust must show by clear and convincing proof that a constructive trust is necessary as a matter of law."

22

*Manning v. Perry*, 242 So. 3d 972, 976 (¶18) (Miss. Ct. App. 2017).

¶59.    The chancery court addressed Patsy's constructive-trust argument in its findings:

In this case, the Second Amended Complaint fails to plead any of the requisite elements for the imposition of a constructive trust.

a.      First, the Court finds that Defendant cannot have been "unjustly enriched" as a matter of law.  The allegations in the Complaint establish that Plaintiff's alleged payments were voluntarily made.  Under Mississippi law, voluntary payments cannot be recovered back, and "if payment is made, even by mistake, to a creditor of a third person to satisfy a just debt of that third person, the payor has no right of restitution of or from the third party." *Omnibank of Mantee v. United Southern Bank*, 607 So. 2d 76, 92 (Miss. 1992) (citations omitted).

b.      Second, there was consideration for Plaintiff's payments of the indebtedness on the subject property. The Court takes judicial notice of a previous case involving the parties in which the Chancery Court of Pike County considered the issue and expressly found that Plaintiff's payments to the secured creditors on Defendant's properties constituted "compelling proof of the love and concern" she had for Defendant (her son). *See* Judgment, para. 5, 7, Edwin L. Bean v. William Timothy White, et al., In the Chancery Court of Pike County, Mississippi, Cause No. 2009-664. It is well-established in Mississippi that "love and affection" may, in the circumstances present[ed] here, constitute adequate consideration. *Estate of Fallon v. Fallon*, 30 So. 3d 1281, 1283 (Miss. App. 2010).

c.      Further, based upon the allegations in the Complaint, the Court finds that Defendant was clearly not in a position to exercise a dominant influence over Plaintiff. In fact, the Second Amended Complaint alleges just the opposite.

d.      Finally, the Second Amended Complaint wholly fails to allege that Defendant engage in any type of fraud or overreaching.

¶60.    I find that the chancery court's determination was proper.  "[I]t is well-settled that a constructive trust does not arise simply because a party fails to perform under a contract."

23

*Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (¶27) (Miss. 2014). Additionally, "[a] familial relationship is not intrinsically one of confidence." *McNeil v. Hester*, 753 So. 2d 1057, 1065 (¶28) (Miss. 2000). Patsy failed to show wrongful conduct that could justify the imposition of a constructive trust. *E.g.*, *Joel v. Joel*, 43 So. 3d 424, 431 (¶24) (Miss. 2010) (listing examples of such conduct). I would therefore affirm the chancery court's findings.

## IV.    Lien

¶61.    Patsy requested "that she be granted a lien against the subject property to secure said lien." As the chancery court noted, "the law does not recognize a 'lien to secure a lien.'" Moreover, "there simply was no debt to form the requisite basis for a lien" because Patsy's claim is barred by the statue of frauds and the statute of limitations.

## CONCLUSION

¶62.    In light of our standard of review, I find that the chancery court properly dismissed Patsy's second amended complaint. Because I would affirm the chancery court's judgment in full, I respectfully concur in part and dissent in part from the majority opinion.

**BARNES, C.J., JOINS THIS OPINION.**