¶ 1. The Circuit Court of DeSoto County granted the motion of Cordova Floors, Inc. to enforce settlement agreement. Mr. and Mrs. Curtis Ammons appeal to this Court arguing, inter alia, that the trial court erred in resolving the disputed issue of fact as to whether a "meeting of the minds" occurred between the parties in entering into the settlement agreement. The result of this case depends substantially on the standard of review afforded the circuit judge's determination that a meeting of the minds occurred between the parties. We find that since neither party objected to, nor even questioned, the circuit judge's deciding the disputed issue, they assented to his doing so. Giving the circuit court's findings the same deference accorded a chancellor's findings of fact, we affirm.
 STATEMENT OF FACTS AND PROCEEDINGS IN THE COURT BELOW ¶ 2. On May 3, 2002, Mr. and Mrs. Ammons (the Ammons) contracted with Cordova Floors, Inc., (Cordova) to install hardwood floors in their new home, which was under construction in Hernando. The total amount of the contract to install approximately 1,900 square feet of wood flooring was $12,825, to be paid in three installments. The Ammons paid fifty percent, or $6,425, before any work was performed. After approximately 1,200 square feet of flooring had been installed, the Ammons determined that the installation was defective and not done in an workmanlike manner. They refused to allow Cordova back onto the property to complete the installation.
 ¶ 3. The parties participated in a telephonic mediation conference on May 31, 2002, which was conducted by the Mid-South Better Business Bureau. Julie Dee acted as the mediator, and Mrs. Roletta Ammons, her construction foreman, Carl Daniel, Scott Gallagher (owner of Cordova), and several other employees of Cordova participated in the telephone mediation.
 ¶ 4. Immediately following the mediation, on Friday May 31, 2002, Cordova delivered the remaining materials to the Ammons, and they in return delivered a $4,475 check to Cordova. That weekend, the Ammons met with three different contractors who each advised that the partially-installed floor would have to be torn up and the process begun anew. On Monday, June 3, the Ammons notified Julie Dee that they could not locate a contractor to repair the floors and that they were stopping payment on the check delivered to Cordova on May 31. *Page 187 
 ¶ 5. The Ammons filed a complaint in the Circuit Court of DeSoto County, Mississippi, on July 3, 2002, alleging that Cordova failed properly to install the hardwood floors and that, as a result, the Ammons suffered damages in the amount of the cost to repair the floors and the delay caused on closing of the mortgage on the home.
 ¶ 6. Cordova filed an answer denying the allegations of defective installation and a counter-claim for breach of contract based on the Ammons' failure to pay the remaining amount of the contract price. In the factual recitation of the counterclaim, Cordova alleged that the mediation resulted in a settlement whereby Cordova would supply the Ammons the remaining materials necessary to complete the floor and the Ammons agreed to pay Cordova $4,475 as full and final payment on the written agreement. Cordova further alleged full performance on the company's part of the mediated settlement and claimed that the Ammons' stopping payment of the check violated the mediated agreement so that the Ammons remained indebted to Cordova in the full amount remaining on the original contract, $6,400.
 ¶ 7. In answer to the counterclaim, the Ammons admitted to writing and stopping payment on the check "because Cordova . . . refused to comply with the terms of the sales contract," but denied all other allegations relating to the mediation. In response to requests for admission, the Ammons admitted that the parties entered into settlement negotiations/mediation with the Better Business Bureau of the Mid-South, but submitted that "[t]he proposed settlement called for [the Ammons] being able to find a flooring contractor to finish and repair the floor." Unable to locate a contractor willing to perform the repair, the Ammons denied that a binding settlement had been reached between the parties at mediation.
 ¶ 8. On October 24, 2003, Cordova Floors filed a motion to enforce the settlement agreement, without citing any rule of civil procedure as authority for the motion. Attached as an exhibit was an affidavit of the mediator, Julie Dee; the affidavit stated that as a result of the mediation, an agreement was reached between the parties and attached a letter setting forth "all terms of the agreement." The letter, which was authored by the mediator at the request of Cordova, approximately seven months after the mediation, provided:
 Parties came to the following agreement which was to take place the afternoon of 5/31/02, all do [sic] the urgency of this case. Cordova Floors agreed to leave material, glue, cleaning kit, and putty and sell Ms. Ammons and her foreman, Mr. Daniels, the rest of the material needed to finish the job and deliver it that same afternoon. Parties agreed that the remaining balance $4475.00 would be paid to Cordova Floors that same afternoon, once the materials were delivered.
The affidavit further provided that subsequent to the mediation, Mrs. Ammons contacted the mediator on June 3, 2002, and advised that she no longer wanted to abide by the mediation agreement. The mediator responded that since an agreement had already been reached, the case was no longer eligible for further dispute resolution.
 ¶ 9. The Ammons responded, admitting that "the parties attempted to reach a resolution of the complaint. However, any agreement attempted to be reached by the parties was contingent upon certain factors" as shown in the affidavit of Carl Daniel, the construction foreman who participated in the mediation conference. Daniel's affidavit reflected that: *Page 188 
 Forty-five minutes into the conversation, a proposed settlement was reached: The Ammons' would pay $4,475 for the remainder of materials, transition molding, glue, and cleaning agent to be delivered TODAY (May 31, 2002) on the condition that they (the Ammons') could find someone to repair and finish the floor before closing the loan on the house as they had already missed their initial closing date of May 22, 2002.
Mrs. Ammons executed an affidavit to the same effect.
 ¶ 10. The motion was heard by the Honorable George B. Ready, circuit court judge, on January 21, 2004. Noting the Ammons' response to the request for admission, the circuit judge asked the Ammons' counsel whether "the only issue would really be . . . if there was a meeting of the minds." Counsel responded, "Yes, sir, that's the issue" and argued that since the parties "had two different thoughts" regarding whether the contract was contingent upon the Ammons' locating someone to repair the floors, there was no "meeting of the minds." Cordova argued that the company had fully performed the settlement agreement by delivering the flooring materials and that Mrs. Ammons "just wanted to change her mind." Both parties quoted from the affidavits which had been previously filed in the record. The Ammons argued that since the affidavits were conflicting, there was no meeting of the minds. The trial court rendered a bench opinion that the agreement would be enforced based upon "the actions taken" by the parties. The order enforcing settlement agreement and dismissing with prejudice all claims and counterclaims filed in the action, was entered on January 30, 2004. The circuit court found that as a result of the mediation, the parties reached an agreement to settle their dispute and that the agreement was subsequently affirmed by Julie Dee. The court found a "meeting of the minds" based upon Cordova's delivery of the materials to the Ammons subsequent to the mediation and the Ammons' return delivery of their check to Cordova. The court found that the parties had entered into a binding agreement and ordered the Ammons to pay Cordova the agreed upon settlement amount of $4,475.
 ¶ 11. The Ammons filed a motion for relief from order enforcing settlement agreement, or in the alternative, to reconsider the order enforcing the settlement agreement on the grounds that the court "mistakenly applied the law as it pertains to mediation in cases involving the Better Business Bureau" in that the rules and regulations of that organization require agreements to be reduced to writing and signed by all parties prior to being valid agreements. This motion was denied by order entered February 27, 2004.
 ¶ 12. For the first time on appeal to this Court, the Ammons contend that Cordova's motion to enforce settlement was "in essence" a motion for summary judgment, which should not have been granted in light of the conflicting affidavits. Cordova agreed that the motion "t[ook] on the characteristics of a motion for summary judgment when affidavits and other evidence outside the pleadings are considered," and argued that in the instant case, "the trial court correctly determined that there was no genuine issue of material fact and, therefore, granting of the dispositive motion was correct."
 STANDARD OF REVIEW ¶ 13. "The existence of a contract and its terms are questions of fact to be resolved by the fact-finder, whether a jury, or a judge in a bench-trial." Anderson v. Kimbrough, 741 So.2d 1041,1045 (¶ 12) (Miss Ct.App. 1999). The supreme *Page 189 
court has held, "[A] circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.Wilson v. Greyhound Bus Lines, Inc., 830 So.2d 1151, 1155 (¶ 9) (Miss. 2002) (citing Illinois Cent. R.R. v. Travis,808 So.2d 928, 931 (Miss. 2002)) (overruled on other grounds). Questions concerning the construction of contracts, however, are questions of law that are reviewed de novo. G.B. "Boots" Smith Corp. v.Cobb, 860 So.2d 774, 777 (¶ 6) (Miss. 2003).
 ISSUES AND ANALYSIS I. WHETHER THE TRIAL COURT ERRED IN RULING ON THE DISPUTED ISSUE AS TO WHETHER THERE WAS A MEETING OF THE MINDS BETWEEN THE PARTIES
 ¶ 14. We are presented with the surprisingly confusing issue of whether, or in what circumstances, a trial court judge may, on motion to enforce settlement agreement, rule on a disputed issue as to the existence of a settlement agreement. Many cases involving the existence of settlement agreements, especially whether a "meeting of the minds" has occurred, arise in chancery court where there is no question as to the identity of the finder of fact. See, e.g., Hastings v. Guillot, 825 So.2d 20 (Miss. 2002). Certain other cases defer to the circuit judge as finder of fact on the issue of "meeting of the minds" without identifying the procedure by which the circuit judge became the finder of fact. See, e.g., Howard v. Totalfina E P USA, Inc.,899 So.2d 882, 888-89 (¶¶ 17-18) (Miss. 2005) (deferring to circuit judge as fact finder on issue of whether meeting of minds occurred in settlement agreement). In Gulfport Pilots Assoc.,Inc. v. Kopszywa, 743 So.2d 1036, 1038 (¶ 10) (Miss.Ct.App. 1999), this Court affirmed the circuit judge's determination that a meeting of the minds had occurred, finding the evidence "ample . . . to conclude that a meeting of the minds did take place" and finding "it simply a waste of judicial resources to opine on the obvious."
 ¶ 15. In the instant case, Cordova cited no procedural rule as authority for the motion to enforce settlement, and the Ammons never objected. Neither party ever questioned the propriety of the trial court's ruling on whether a meeting of the minds occurred between the parties. The question on appeal is whether we are to hold the trial judge in error for a procedural defect never brought to his attention by the parties below. We think not. In Mills v. Nichols, 467 So.2d 924, 931 (Miss. 1985), the Mississippi Supreme Court held that "a trial court will not be put in error on appeal for a matter not presented to it for decision." Likewise, "[i]t is a well stated principle that issues not presented at trial cannot be raised on appeal." Bender v.North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss. 1994). Further, procedural defects may be waived by a party's failure to object to the procedure employed. See, e.g., Koestlerv. Mississippi College, 749 So.2d 1122, 1123-25 (¶¶ 1, 13) (Miss.Ct.App. 1999).
 ¶ 16. While Rule 56 would have appeared to have been the more appropriate procedure for ruling on Cordova's motion,[1] as presented to and ruled on by the circuit court, the hearing on Cordova's motion to enforce settlement appears to have been treated by the court and parties as a Rule *Page 190 
42(b) separate trial on Cordova's counterclaim, with the parties consenting to the presentation of evidence by affidavit and to the determination of fact by the trial judge. Counsel for Cordova stated that the parties had agreed that the affidavit of Ms. Dee "would be submitted, if necessary, as [her] testimony;" the Ammons did not take issue with this representation. Their counsel indicated that Mrs. Ammons was present "and if testimony is needed, [was] willing to testify that the check was written with the understanding that if the agreement did not go through then that could be held in escrow. . . ."
 ¶ 17. The Ammons argued that the affidavits were conflicting but only as to the merits of the issue as to whether a meeting of the minds had occurred. Neither party informed the trial court, either at the hearing or on motion to reconsider, that the motion was governed by Rule 56 of the Mississippi Rules of Civil Procedure and that, under that rule, the trial court was not entitled to rule on the disputed issue of fact.
 ¶ 18. We find that the Ammons' failure to object to the procedure employed by the circuit court and their arguing the conflicting affidavits on the merits rather than as a procedural limitation on the circuit judge's authority to rule, waived any objection to the trial court's deciding the disputed issue. Therefore, we decline to hold the trial judge in error and review his findings under the same deferential standard accorded those of a chancellor.
 II. WHETHER THE CIRCUIT COURT ERRED IN GRANTING THE MOTION TO ENFORCE SETTLEMENT
 ¶ 19. "The law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." McManus v. Howard, 569 So.2d 1213, 1215 (Miss. 1990). In order to have a valid settlement agreement, there must be consideration and a meeting of the minds between competent contracting parties. Viverette v. State Highway Comm'n ofMiss., 656 So.2d 102, 103 (Miss. 1995) (citing Hutton v.Hutton, 239 Miss. 217, 230, 119 So.2d 369, 374 (1960)). As this Court explained in In re Estate of Davis, 832 So.2d 534, 537 (¶ 9) (Miss.Ct.App. 2001), no meeting of minds occurs until the offeree accepts the terms and provisions of the offer. Acceptance, however, can occur in a number of different ways and may be inferred from conduct of the parties. Id. at 537 (¶ 10). "The burden is upon the party claiming the benefit of the settlement to demonstrate by a preponderance of the evidence that there was a meeting of the minds." Viverette, 656 So.2d at 103.
 ¶ 20. In the instant case, the burden is on Cordova to show by a preponderance of the evidence that a meeting of the minds occurred between the parties, so as to create a valid agreement. We agree with the circuit court's determination that Cordova satisfied this burden through "the actions taken" by the parties.
 ¶ 21. Hastings v. Guillot, 825 So.2d 20 (Miss. 2002) is analogous to the case at bar. In Hastings, settlement negotiations were initiated during depositions; Guillot made an offer to Hastings which Hastings accepted. The court reporter was released, and the depositions concluded. Hastings thereafter refused to execute the proposed "Mutual Release and Settlement Agreement" forwarded by Guillot. Hastings, 825 So.2d at 22 (¶¶ 5-6). The chancery court granted Guillot's motion to enforce settlement, and the supreme court affirmed, finding that Guillot had shown by a preponderance of the evidence that a meeting of the minds did occur. The Mississippi Supreme Court held: *Page 191 
 Perhaps the most compelling evidence that a meeting of the minds had been achieved was the release of the court reporter before the scheduled depositions were concluded. Afterwards, a release and settlement statement were prepared and sent to counsel for Hastings. Had there been no meeting of the minds, there would have been no such documentation prepared. Without a meeting of the minds, the attorneys would have proceeded with the case, not prepared settlement documents. Even though there was no discussion about the settlement being contingent on it being reduced to writing, it appears this was simply the next logical step after a settlement agreement had been reached.
Hastings, 825 So.2d at 23 (¶ 16).
 ¶ 22. The most compelling evidence that a meeting of the minds occurred between the Ammons and Cordova was that immediately after the mediation conference, Cordova delivered the remaining materials to the Ammons who, in return, delivered a $4,475 check to Cordova. The conduct of the parties is wholly consistent with a finding that a settlement had been achieved. In reaching his decision, the circuit judge relied not upon the conflicting affidavits in the record but upon the undisputed evidence of the "the actions taken" by the parties. We agree that a preponderance of the evidence reflects that a meeting of the minds occurred between the parties.
 ¶ 23. The Ammons contend that there was no binding settlement as their ability to locate a flooring contractor to install the remaining floor was a "condition precedent" to their duty to perform. A copy of an e-mail from the mediator to Mrs. Ammons, and filed of record by the Ammons, contradicts this assertion:
 As the notes indicate, you, your foreman, Mr. Karl Daniel, Mr. Scott Gallagher . . . were all on the conference call on May 31, 2002 as parties had agreed to handle this case through informal mediation since you expressed urgency in the matter and wanted it handled asap. The mediation agreement reached by parties via phone was for Cordova Floors to leave the material, glue, cleaning kit, putty and sell the rest of the materials to you to have someone else finish the job. In turn, you were to pay Cordova Floors $4475.00. This agreement was reached without it being contingent on you being able to find someone to do the job. The agreement was carried out the same day as it was mediated on the phone, May 31, 2002. The materials were delivered and you issued a check to Cordova Floors. Per the notes on this case, you called me June 3, 2002 stating that you had changed your mind about the agreement as you could not get anyone to do the work. . . . With the circumstances as they were, we could not force Cordova Floors to go to arbitration since this case had been mediated and money and materials had exchanged hands.
(emphasis added).
 ¶ 24. In finding that a meeting of the minds occurred, the trial judge reviewed the entire file which included not only Ms. Dee's affidavit and letter to Cordova which referenced no contingency but also the e-mail from Ms. Dee to Mrs. Ammons which directly contradicted the Ammons' contention. Further, the telephone mediation, delivery of materials and return delivery of the check all occurred on the same day. The check was not held in escrow or conditioned in any way. The conduct of the Ammons in delivering the check upon delivery of the materials refutes their allegation that any other condition precedent existed to their duty to perform. The trial *Page 192 
judge's finding of a meeting of the minds is thus supported by substantial evidence.
 III. WHETHER THE AMMONS' PERFORMANCE OF THE SETTLEMENT AGREEMENT WAS EXCUSED.
 ¶ 25. The Ammons argue that Cordova's "shoddy work" prevented their locating a contractor willing to install the remaining flooring and, therefore, their performance under any settlement agreement was excused. We find this issue procedurally barred as not having been raised below. At the hearing on motion to enforce settlement, counsel for the Ammons represented to the trial judge that the only issue before the court was whether a meeting of the minds had occurred between the parties. Again, we decline to hold the trial court in error on a matter not presented to him for decision. See Mills, 467 So.2d at 931.
 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
[1] Under Rule 56(c) summary judgment may only be granted where there are no genuine issues of material fact so that the moving party is entitled to judgment as a matter of law.