# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01055-COA

ROY HAL PARKER, JR., AS CONSERVATOR
OF THE ESTATE OF WILLIAM MATTHEW
ROSS, A VULNERABLE ADULT AND
INCOMPETENT TO MANAGE HIS AFFAIRS;
JAMES HAL ROSS, JR.; AND JASON HURDLE
ROSS

APPELLANTS

v.

SUZANNE DICKSON ROSS, INDIVIDUALLY,
AS TRUSTEE OF THE JAMES HAL ROSS
REVOCABLE TRUST, AS EXECUTRIX OF THE
ESTATE OF JAMES HAL ROSS, AND AS
MEMBER/MANAGER OF H AND S I, LLC, H &
S II, LLC, H & S III, LLC, AND H & S IV, LLC;
H AND S I, LLC; H & S II, LLC; H & S III, LLC;
H & S IV, LLC; THOMAS W. DALLAS; FRED M.
HARRELL, JR.; PINNACLE TRUST COMPANY
INC.; PINNACLE HOLDING COMPANY, LLC
D/B/A PINNACLE TRUST COMPANY; AND
PINNACLE HOLDING COMPANY INC.

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2020 |
| TRIAL JUDGE: | HON. HAYDN JUDD ROBERTS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | CHUCK McRAE |
| ATTORNEYS FOR APPELLEES: | ADRIAN WESTBROOK MILLS |
| | LUKE DOVE |
| | CECIL MAISON HEIDELBERG |
| | R. MARK HODGES |
| | JAMES A. BOBO |
| | JOSHUA MICHAEL COE |
| | CHARLES EDWARD COWAN |
| | MICHAEL ALLEN AKERS |
| | MARK C. BAKER SR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 05/10/2022 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     James Hal Ross (Ross) created certain trusts before his death in an effort to provide for his three sons from another marriage and the sons' step-mother after his death. James Hal Ross, Jr., Jason Hurdle Ross, and Roy Hal Parker, Jr., as conservator of the estate of William Matthew Ross (the Ross sons) filed a complaint in the Circuit Court of Hinds County, against their step-mother and others, alleging the mismanagement of the trusts and to recover real property they alleged was improperly sold. The Hinds County Circuit Court transferred the lawsuit to the Rankin County Chancery Court since some of the alleged real property sold from the trust was located in that county. All defendants either filed or joined a motion to dismiss or, in the alternative, for summary judgment, alleging (1) a three-year statute of limitations precluded the lawsuit; and (2) Matthew failed to prove his mental disability, thereby tolling the statute of limitations. The Rankin County Chancery Court dismissed the complaint as time-barred for the reasons asserted by the Defendants. The Ross sons appeal. We affirm the chancery court's grant of summary judgment as to all claims barred by the three-year statute of limitations. Finding that the allegations relating to mismanagement of the trust and the recovery of real property are governed by a ten-year statute of limitations and that Matthew created a genuine issue of material fact as to his unsoundness of mind, we reverse the judgment in part and remand the case to the trial docket of the Rankin County Chancery Court.

2

## FACTS AND PROCEDURAL HISTORY

¶2.     James Hal Ross left a will naming Suzanne Dickson Ross, his wife and step-mother to his three sons, as executrix of his estate. In his will, he left some personal items to Suzanne and bequeathed the remainder of his estate to the James Hal Ross Revocable Trust (Revocable Trust), which Ross created on November 28, 2000.  The Revocable Trust provided that Ross and Suzanne were its beneficiaries during Ross' lifetime.  Pursuant to its terms, the Revocable Trust terminated upon Ross' death, and its assets were to be transferred to two different trusts.  The first trust was the "Marital Trust," for the benefit of Suzanne. The second trust created upon Ross' death was the "Credit Trust," which provided for Suzanne and the needs of Ross' three sons from a previous marriage, James Hal Ross, Jr., Jason Hurdle Ross, and William Matthew Ross.  This planned termination and transfer eventually occurred when Ross died on February 3, 2003.

¶3.     Pursuant to the terms of the trusts,  Trustmark National Bank was named as the trustee of both the Marital Trust and the Credit Trust.  However, it does not appear that Trustmark ever assumed those duties. Instead, Defendant Pinnacle Trust Company became the trustee of both trusts.[1]  Ross' will was probated, and his estate finally closed on July 29, 2005. On November 12, 2013, the Ross sons filed a petition in the Rankin County Chancery Court seeking to reopen the estate as a result of "maladministration" of the estate on the part of

---

[1] Pinnacle Trust Company's brief states that Pinnacle Trust Company became successor trustee of the Revocable Trust in 2005. Defendants Pinnacle Holding Company LLC d/b/a Pinnacle Trust Company, Pinnacle Holding Company, Inc., and Pinnacle Trust Company Inc. appear to be the same entity and were the subject of several dissolutions and mergers that are not relevant to this appeal.

3

Suzanne and to require an inventory and accounting of all Suzanne's activities as executrix of the estate.[2] That action was dismissed on October 17, 2014.

¶4. On September 16, 2016, Matthew Ross, by and through his conservator, Roy Hal Parker, Jr., filed a complaint in the Hinds County Circuit Court, First Judicial District, alleging Suzanne mismanaged the trusts and improperly sold real property that was in the trust.[3] The complaint was amended on January 5, 2017, and added Matthew's other two brothers, James Hal Ross, Jr. and Jason Hurdle Ross, as named plaintiffs. The complaint alleged mismanagement of the trusts, improperly transferring real property that should have been in the trust, conversion, breach of fiduciary duty, breach of duty of loyalty, fraud and misrepresentation, negligence, deception, unjust enrichment, corporate freeze-out, and bad faith against Suzanne, Thomas Dallas, Fred Harrell, and Pinnacle Trust Company. In response, all Defendants either filed or joined another Defendant's motion to dismiss pursuant to Mississippi Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) or, in the alternative, to transfer the case to the Rankin County Chancery Court. On December 12, 2017, the Plaintiffs filed a response to the Defendants' motion to dismiss and challenged the Defendants' request to transfer venue.

¶5. On June 18, 2018, the motion to transfer was granted by the Hinds County Circuit

---

[2] This suit was filed against Suzanne individually and as executrix of Ross' estate.

[3] On September 17, 2015, the Hinds County Chancery Court entered an order appointing Roy Hal Parker, Jr., as Matthew's conservator. On February 11, 2016, the Hinds County Chancery Court issued an order authorizing Parker, as Matthew's conservator, to employ counsel to represent him in identifying and protecting/securing any assets or financial interests of Matthew.

4

Court, apparently without considering the motions to dismiss.[4]  On September 10, 2018, the Plaintiffs filed a supplemental response in Rankin County to the Defendants' joint motion to dismiss filed in Hinds County.[5]  In that document, the Plaintiffs asserted "the statute of limitations does not bar this action because all claims are timely . . . and because the statute is tolled for [Matthew's] legal mental disability."

¶6.     On September 13, 2018, the Rankin County Chancery Court held a hearing on the Defendants' joint motions to dismiss, which previously had been filed in Hinds County before the transfer.  The hearing solely focused on a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6).[6]  At the hearing, the Ross sons maintained that "the arguments boil down to a statute of limitations issue [as stated] in our supplemental response."  At the close of hearing, the court denied the Defendants' motions to dismiss and allowed the Ross sons the opportunity to file a second amended complaint.

¶7.     On December 23, 2019, the Plaintiffs filed their second amended complaint in the Rankin County Chancery Court.[7]  In their second amended complaint, the Ross sons stated,

---

[4] The Ross sons argued in the trial court that since the case was transferred and not dismissed, the issue of dismissal was implicitly denied and now resolved as the law of this case.  That issue was not one of the issues appealed to this Court.

[5] As noted *supra* ¶4, the Ross sons' supplemental response, which was filed in Rankin County, was filed in addition to the Ross sons' response that had been filed in the Hinds County Circuit Court.

[6] The court reasoned that "[the Hinds County judge] presumably took care of the 12(b)(1) and 12(b)(3) even though he did not technically address that portion of it."

[7] On October 15, 2018, the Ross sons filed a motion for leave to amend their complaint.  On December 19, 2019, the Rankin County Chancery Court signed an order authorizing the filing of the second amended complaint.

among other things, the following:

- On November 28, 2000, James Hal Ross executed his last Will and Testament in which he established a Revocable Trust.

- The Revocable Trust was formed to allow James Hal Ross "control of his assets until his death," and "to care for his wife, his children, and Suzanne's children" after his death. As such, the Revocable Trust created the "Credit Trust and the Marital Trust" to become operative at his death.

- "On June 27, 2005, as Trustee of the Revocable Trust, **Suzanne signed a Transfer of Assets** . . . from the Revocable Trust **to Suzanne individually**."

- From the date of James Hal Ross's death on February 3, 2003, until the present, transactions involving **"large sums of money," "real property,"** mineral rights, **"timber," land**, securities and interest in Mr. Ross's law practice have been **manipulated** by Suzanne, Harrell, Dallas, and Pinnacle, and **"concealed"** from Plaintiffs. (Emphasis added).[8]

- H and S I, LLC is a domestic limited liability company which was formed by James Hal Ross. Suzanne was the LLC manager and registered agent, and Pinnacle Trust was a member of H and S, I LLC.

- The assignment of James' and Jason's interests in H and S I was **"expressly prohibited"** by the Trust Agreement and the H and S I Operating Agreement.

- The Trust Agreement expressly states that a "beneficiary shall have no

_____

[8] Mississippi Code Annotated section 15-1-67 (Rev. 2019) and caselaw allows a tolling of the general statute of limitations until discovery of concealed causes of action if the plaintiff can prove "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was [per]formed on their part to discover it." *Stephens v. Equitable Life Assur. Society of U.S.*, 850 So. 2d 78, 83-84 (¶18) (Miss. 2003); *accord Robinson v. Cobb*, 763 So. 2d 883, 887 (¶19) (Miss. 2000). The Ross sons did allege "fraudulent concealment" in their brief to this Court, but it is unclear exactly what proof is alleged concerning that issue. The trial court did not address this issue in its ruling granting summary judgment, and it does not appear the parties have done discovery despite the lengthy nature of the procedural history.

power to sell, assign, transfer, encumber or in any manner to anticipate or dispose of any part of his or her interest in the trust assets or in the income produced from the assets." Yet the complaint alleged that is exactly what happened.

• "On July 1, 2005, Pinnacle Trust Company was appointed as Trustee of the Credit Trust and the Marital Trust. The Trust Agreement expressly states that the trustee of the Marital Trust and the Credit Trust shall be Trustmark National Bank."[9]

• Further, the second amended complaint alleges that Pinnacle Trust Company committed trust violations when it "failed to communicate, failed to properly collect" and "preserve the property intended to comprise the corpus of the credit trust and/or marital trust", "mixed property" that should have been part of the trust that had been "improperly removed" and "charged excessive management fees." The complaint concluded that Pinnacle Trust "should be disgorged" of those fees, and that those fees should be "returned to the corpus of the trust."

¶8.    As a result of the above allegations from the second amended complaint, the Ross sons sought the following injunctive relief:

• A **"complete accounting"** by the Defendants relating to the **"Revocable Trust," "the Credit Trust," "the Marital Trust,"** and "all H and S entities";

• "**Compel the trustee** to **redress the breaches of trust** established herein by **restoring property**" or "paying the monetary equivalent of such property from the corpus of the trusts";

• "Void all acts of the trustee wherein property was wrongfully disposed of, trace such property, and **recover the property** or its proceeds" and to remove "Pinnacle as Trustee and **appointing a special fiduciary** to **take possession** of the trust property and administer the trust" . . . .

(Emphasis added).

---

[9] Yet despite this clause of the trust document, Pinnacle Trust Company was appointed as the trustee, which would have been partly owned by Suzanne by virtue of her alleged interest in H and S I, which allegedly owned, in part, Pinnacle Trust Company.

7

¶9. In response, on January 21, 2020, Suzanne, individually and as trustee of the revocable trust, as executrix of the Ross estate, and as the manager or a member of the H&S entities, filed a joint motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment.[10] The remaining Defendants either filed their own motions for the same relief or joined with another defendant. On August 24, 2020, the court held a hearing on the motion. It is important to note that the Ross sons did not file another written response to the Defendants' motion but instead adopted the arguments that had previously been stated in their supplemental response. *See supra* ¶6. Further, it is clear from the transcript of the hearing that the Ross sons were under the impression the motion was being treated as a Rule 12(b)(6) motion and that their complaint would be taken as true and would serve as their response to the Defendants' motion to dismiss. In fact, the Ross sons objected to the motion being treated as a motion for summary judgment. At the hearing, the Ross sons stated to the court, "You made mention that one of the motions was also a Rule 56. We would object to that, your Honor. This is a 12(b) motion as I understand it." The Ross sons further argued that they had not yet been able to conduct discovery.

¶10. On August 28, 2020, the chancery court entered a judgment finding that the claims of James Hal Ross, Jr. and Jason Hurdle Ross were time barred by the three-year statute of

---

[10] This case has a lengthy procedural history involving testing the allegations of the second amended complaint before the motion to dismiss was granted. Since the allegations of the second amended complaint and the correct statute of limitations is the issue before this Court, that long procedural history will only be mentioned when relevant to the issue on this appeal.

limitations and dismissed them "pursuant to Rule 12(b)(6)."[11] The chancellor further found that Roy Hal Parker, Jr., as conservator of William Matthew Ross, had failed to prove by clear and convincing evidence that Matthew was so mentally incompetent as to toll the statute of limitations. Accordingly, the chancellor granted the motions for summary judgment as to his claims. The Ross sons appealed. Finding that (1) the chancery court incorrectly applied the three-year statute of limitations to **all** claims instead of the correct ten-year statute of limitations for claims in trust and recovery of real property and that (2) Matthew created a genuine issue of material fact as to his unsoundness of mind, we affirm in part and reverse in part the summary judgment dismissal and remand this case to the active docket of the Rankin County Chancery Court.

## STANDARD OF REVIEW

¶11.    The final judgment in this case stems from the Defendants' motion to dismiss or, in the alternative, for summary judgment. A motion to dismiss under Mississippi Rule of Civil Procedure 12 or a motion for summary judgment under Rule 56 raise questions of law and the trial court's ruling is reviewed de novo. *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1209-10 (¶¶6-7) (Miss. 2001). "Under certain conditions, motions for summary judgment and for judgment on the pleadings are interchangeable." *Id*. at 1213 (¶24). In a motion to dismiss, where "matters outside the pleading are presented to and not excluded by the court," a motion to dismiss must be treated as one for summary judgment. *Rosen v. Gulf Shores Inc.*, 610 So. 2d 366, 368 (Miss. 1992) (quoting M.R.C.P. 12(b)(6)).

---

[11] The court also noted that the "Defendants also met their burden of proof in support of summary judgment."

¶12. Mississippi Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "'The evidence must be viewed in the light most favorable to the party against whom the motion has been made[,]'" and "[t]he moving party has the burden of demonstrating that no genuine issue of material facts exists, [giving] . . . the non-moving party . . . the benefit of the doubt concerning the existence of a material fact." *Duckworth v. Warren*, 10 So. 3d 433, 436-37 (¶9) (Miss. 2009) (quoting *One S. Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (¶6) (Miss. 2007)).

¶13. As stated previously, the Defendants alleged that all claims in the second amended complaint were governed by the general three-year statute of limitations. The Chancery Court granted the dismissal, specifically finding that all issues were governed by a three-year statute of limitations. We consider issues relating to statutes of limitations as a question of law and therefore review them de novo. *Lott v. Saulters*, 133 So. 3d 794, 798 (¶5) (Miss. 2014)).

**ANALYSIS**

**1. Action Relating to the Trusts and Recovery of Land**

¶14. The Ross sons argue that the chancery court erroneously applied a three-year statute of limitations to their claims involving trusts and the recovery of land. Mississippi Code Annotated section 15-1-39 (Rev. 2019) states, "Bills for relief, in case of the **existence of a**

10

**trust** not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . . ." (Emphasis added). Mississippi Code section 15-1-7 (Rev. 2019) states, "A person may not make an entry or **commence an action to recover land except within ten years** next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims." (Emphasis added). The statute-of-limitations period begins to run "from the time the act or acts were committed by which the actor becomes chargeable." *Alvarez v. Coleman*, 642 So. 2d 361, 374 (Miss. 1994) (quoting *Thames v. Holcomb*, 230 Miss. 387, 395, 92 So. 2d 548, 552 (1957)).

¶15.    In *Wholey v. Cal-Maine Foods Inc.*, 530 So. 2d 136, 139 (Miss. 1988), the Mississippi Supreme Court reiterated that section 15-1-39 applies to both express and implied (or constructive) trusts. (Citing *Hook v. Bank of Leland*, 134 Miss. 185, 98 So. 594 (1924)). Here, the second amended complaint alleged a trust document created each of the various trusts, which were the subject of this lawsuit. Further, the trust document provided for its operation, yet allegations were alleged that, according to the Plaintiffs, violated that trust document.

¶16.    In *White v. White*, this Court reversed and rendered the chancery court's application of a three-year statute of limitations and held that plaintiff may be entitled to relief under a constructive trust, which provides a ten-year statute of limitations. *White v. White*, 325 So. 3d 666, 677 (¶44) (Miss. Ct. App. 2019) (citing *Manning v. Perry*, 242 So. 3d 972, 977 (¶21) (Miss. Ct. App. 2017)). The appeal occurred after a son refused to transfer title to real

11

property to his mother. *Id*. at 666 (¶2). The mother filed a complaint for quiet title, injunction, breach of contract, imposition of a constructive trust, and damages. *Id*. at 670 (¶8). The chancery court dismissed the complaint based on the three-year statute of limitations for the breach-of-contract claim. *Id*. at (¶9). In reversing the chancellor's decision, this Court held that the applicable limitations period had not yet run. *Id*. at 674 (¶32). This Court based its holding on the fact that the mother had other viable claims besides the breach-of-contract claim. *Id*. These claims included an action to recover land and the imposition of a constructive trust, both of which provide a ten-year statute of limitations. *Id*. at 677 (¶44).

¶17. As part of its reasoning, this Court relied on our decisions in *Bryant v. Dent*, 270 So. 3d 976, 979 (¶14) (Miss. Ct. App. 2018), and *Hodnett v. Hodnett*, 269 So. 3d 317, 319-20 (¶1) (Miss. Ct. App. 2018). *White*, 325 So. 3d at 675-77 (¶¶39, 42). In *Bryant*, an administrator of the decedent's estate (and also a possible heir to the decedent) sought "possession of the real property deeded away by [the decedent], allegedly due to undue influence." *Bryant*, 270 So. 3d at 979 (¶¶13-14). Despite the claims involving an action to recover land, the chancery court found the claims barred by the three-year statute of limitations. *Id*. at 978 (¶7). On appeal, this Court reversed, finding sections 15-1-7 and 15-1-9 applicable, not the three-year statute of limitations. *Id*. at 978-79 (¶¶11-14). *See* Miss. Code Ann. §§ 15-1-7 and 15-1-9. Similarly, in *Hodnett*, this Court acknowledged that an heir at law who sought a child's share of real property deeded away by his mother was not barred by a three-year statute of limitations but was governed by a ten-year statute of

limitations.  *Hodnett*, 269 So. 3d at 319-20 (¶1); *see* Miss. Code Ann. § 15-1-7.

¶18.    The Defendants here alleged that a three-year statute of limitations applied for the Ross sons' claims grounded in malfeasance of and mismanagement of several trusts and in recovery of real property that was alleged to belong to those trusts.  On the contrary, the Ross sons alleged that those actions were "timely" filed.  The causes of action relating to the "existence of a trust" and the recovery of land should not have been dismissed pursuant to the three-year statute of limitations, but rather should have been analyzed as to whether they were filed within the prescribed period of time mandated by the ten-year statute of limitations.[12]  Instead, the trial court lumped all of the causes of actions together and dismissed the entire complaint based on the three-year statute of limitations.  The legal effect of that dismissal was Plaintiffs' claims, for which the ten-year statute of limitations applied, were dismissed erroneously.  This Court does not address whether the ten-year statute of limitations would bar the claims asserted nor whether or when the Ross sons discovered any "concealed" wrongdoing on behalf of the Defendants, which may or may not toll the statute

_____

[12] The dissent argues that the Ross sons did not specifically assert the ten-year statute of limitations and therefore should be barred from doing so now.  The Ross sons maintained that their claims were "timely."  The chancery court determines the law and applies the law to the matter before it.  If a party alleges an erroneous application of the law (that the three-year statute of limitations bars all claims) in a Rule 12(b)(6) motion, testing the sufficiency of the complaint, the court is still bound to follow the law as correct not as erroneously alleged.  The courts are the final arbiters of what the law is.  Here, the chancery court never applied or considered the correct standard that matters in trust and recovery of land have a ten-year statute of limitations not a three-year statute of limitations period.  The Mississippi Supreme Court and this Court have consistently held that reversal is warranted if the trial court applied an erroneous legal standard.  *See, e.g.*, *Davis v. Henderson*, 332 So. 3d 837, 841 (¶16) (Miss. 2022); *Polk Prods. Inc. v. Dowe*, 331 So. 3d 1124, 1129 (¶13) (Miss. Ct. App. 2021).

of limitations. As best as can be determined from the long procedural history depicted in the record on appeal, no discovery has yet to occur. For these reasons, this Court reverses the summary dismissal of any claim relating to the various trusts that stem in equity and any claims as to the recovery of real property and remand this cause to the docket of the Rankin County Chancery Court.

## 2. Actions Relating to Matthew Ross' Unsoundness of Mind

¶19. The Ross sons also argue that the chancery court erroneously found that Matthew failed to prove by clear and convincing evidence his unsoundness of mind, which would have tolled that statute of limitations. We find that Mississippi Code Annotated section 15-1-59 (Rev. 2019) applied to all causes of action where Matthew was a party due to his mental competency. Section 15-1-59 ("the savings statute") provides:

> If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of **unsoundness of mind** shall never extend longer than twenty-one (21) years.

(Emphasis added). "The term 'unsound mind,' when used in any statute in reference to persons, shall include persons with an intellectual disability, persons with mental illness, and persons non compos mentis." Miss. Code Ann. § 1-3-57 (Rev. 2019). The savings clause in section 15-1-59 applies only to actions mentioned in Chapter 1, Title 15, such as the two causes of action discussed *supra*. *See Cole v. State*, 608 So. 2d 1313, 1316 (Miss. 1992).

¶20. In *Rockwell v. Preferred Risk Mut. Ins. Co.*, 710 So. 2d 388, 391 (¶11) (Miss. 1998), the Mississippi Supreme court stated, "The purpose of the savings statute is to protect the

14

legal rights of those who are unable to assert their own rights due to disability." *Id*. This applies to "those who suffer from temporary incapacity as well as those who require a more permanent legal adjudication of unsoundness of mind." *Id*. Thus, the supreme court held that "it is **unnecessary for a party to show formal adjudication of incompetence** in order to toll the running of the statute of limitations. Instead, trial courts must allow the party to present **alternative evidence to prove that he lacked the requisite understanding for handling his legal affairs**." *Id*. (emphasis added.)

¶21. "The test as to whether the claimant is so 'mentally incompetent' as to toll the running of the statute of limitations, is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that **he cannot manage the ordinary affairs of life**?" *Brumfield v. Lowe*, 744 So. 2d 383, 387 (¶20) (Miss. Ct. App. 1999) (emphasis added) (quoting *Shippers Express v. Chapman*, 364 So. 2d 1097, 1100 (Miss. 1978)). Additionally, the Plaintiffs were required to prove that Matthew was mentally incompetent by clear and convincing evidence. *Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 521 (¶16) (Miss. Ct. App. 2017).

¶22. The Ross sons attached two exhibits to their second amended complaint in support of Matthew's mental incompetency. Exhibit A is an answer to Jane Ross' (Matthew's mother) petition for a conservatorship over Matthew dated September 16, 2003. The answer and counterclaim were filed by several parties including Matthew and his stepmother, Suzanne Ross. The answer filed by Suzanne admitted that Matthew was mentally disabled at the time the answer was filed in 2003 but stated that he was "self sufficient in many respects and has

managed his own household and residence since age nineteen."[13] Suzanne also admitted

"that a conservator should be appointed over the estate of William Matthew Ross but denies

that Jane H. Ross should be so appointed in any capacity." Finally, Suzanne alleged in the

answer that

> William Matthew Ross was diagnosed as suffering from mental impairment or disability shortly after birth and is incapable of totally managing his financial estate, although he has done a remarkable and admirable job of so tending to his financial affairs with the help, aid and assistance of Roy Hal Parker (current Trustee for William Matthew Ross) and Suzanne Dickson Ross.

Exhibit B is a 2016 order from the Hinds County Chancery Court authorizing Roy Parker,

Jr., as Matthew's conservator, to employ counsel and file suit "in furtherance of identifying

and protecting the financial assets and/or interests of William Matthew Ross."

¶23. In addition, three doctors signed affidavits in support of the claim that Matthew was

incapable of managing his financial affairs. The affidavits were attached to a motion for

partial summary judgment filed in this action by Matthew's attorney, seeking to classify

Matthew as a "vulnerable adult for the purposes of Mississippi Code Annotated Section 43-

47-5."[14] In Dr. Ken Morris' affidavit, he stated that he "treated William Matthew Ross in an

excess of twenty years," and Matthew was "unable to manage his estate due to mental

---

[13] Matthew was twenty-one years old at the time the answer was filed.

[14] This Court reviews an appeal from summary judgment de novo. *Venture Inc. v. Harris*, 307 So. 3d 427, 431 (¶14) (Miss. 2020). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "the **pleadings**, depositions, answers to interrogatories and admissions **on file**, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis added).

weakness." Dr. Morris also stated that he conducted a "personal examination" of Matthew, and he found that Matthew "suffers from autism."

¶24. In Dr. William Bradley Castle's affidavit, he stated that he too conducted a "personal examination." Dr. Castle opined that after his examination he found that Matthew had "pervasive developmental disability with autistic like behavior." Dr. Castle's affidavit indicated that Matthew "never" was "able to manage his financial affairs." Further, Dr. Castle indicated that in his opinion, Matthew was indeed "incapable of managing his financial affairs."

¶25. Dr. Glenda Scallorn stated in her affidavit that she conducted a personal "physical and mental examination," and it was her opinion that Matthew had a "physical disability and mental weakness," which made him "incapable in managing his person and his estate." Her findings indicated he was an "adult with mental retardation resulting in need for assistance in managing, planning, and execution of financial issues." She further opined that Matthew can handle daily activities such as "personal care" and "shopping" but needs "assistance with major life issues." Finally, Dr. Scallorn stated that Matthew "need[ed] assistance with shopping because **he doesn't understand the concept of change and doesn't know what amount of money he should spend or get back in change**." (Emphasis added).

¶26. Further, Dr. James Irby conducted a neuropsychological evaluation on Matthew on June 21, 2016. He indicated Matthew had a "lifelong history of developmental delay, intellectual disability, and poor social awareness and judgment." Matthew attended special education classes in elementary and high school, is unable to write, but is able to read

17

"simple" information. Dr. Irby noted that Matthew is "unable to manage his finances independently." Finally, Dr. Irby indicated Matthew "needed regular and very frequent supervision."

¶27. In summary, Matthew cannot handle his own financial affairs, needs "constant supervision," "assistance with major life issues," has been diagnosed with "autism," and has a "life long history of developmental delay, intellectual disability, and poor awareness." Further, he has been diagnosed in a doctor's report as having "mental retardation resulting in need for assistance in managing, planning, and execution of financial issues." Finally, it was proved he cannot write, can barely read, and cannot shop by himself because he does not understand the concept of purchase pricing and obtaining change. Based on this information, this Court reverses the trial court's grant of summary judgment in part and holds that Matthew created a genuine issue of material fact as to his unsoundness of mind.

**CONCLUSION**

¶28. Pursuant to the facts alleged in the second amended complaint, the Plaintiffs asserted claims concerning the various trusts in this case and to recover land that allegedly belonged to those trusts. As such, those types of legal suits have their own limitations periods set forth in Mississippi Code Annotated sections 15-1-7 and 15-1-39. Those sections expressly mandate a ten-year statute of limitations. We affirm the chancery court's grant of summary judgment as to all claims barred by the three-year statute of limitations. However, because the chancery court applied the wrong statute of limitations to dismiss **all** the Ross sons' claims, including those related to the mismanagement of trusts and the recovery of land, this

18

Court reverses the chancery court's grant of summary judgment in part and remands this case to the active docket for further consideration consistent with this opinion. Further, this Court finds that Matthew created a genuine issue of material fact as to his unsoundness of mind pursuant to Mississippi Code section 15-1-59 and therefore reverses the summary judgment dismissal of Matthew's claims.

¶29.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**CARLTON, P.J., WESTBROOKS, McCARTY, AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WILSON, P.J., AND GREENLEE, J.; McDONALD, J., JOINS IN PART.**

**EMFINGER, J., DISSENTING:**

¶30.   Because the majority reverses the chancellor's decision in this case by doing that which this Court has repeatedly stated we will not do, I dissent.

¶31.   The plaintiffs' second amended complaint was filed in Rankin County Chancery Court on December 23, 2019. On January 21, 2020, some of the defendants filed a motion to dismiss or, in the alternative, for summary judgment. The remaining defendants filed motions to join this motion in the days that followed, with the last joinder request being filed on January 23, 2020. The defendants sought dismissal of all the claims in the complaint based upon their contention that, among other reasons, the plaintiffs' claims were all barred by a three-year statute of limitations. While the plaintiffs, on January 31, 2020, filed a motion for an extension of time to file a response to these motions, they never set the motion for hearing, and they never filed a response. On August 24, 2020, the chancellor heard the parties'

arguments. On August 28, 2020, the chancellor entered an order dismissing all the claims of the plaintiffs as being barred by a three-year statute of limitations.

¶32.    The majority remands this case to Rankin County Chancery Court to determine which, if any, of the plaintiffs' claims may be governed by the ten-year statute of limitations contained in Mississippi Code Annotated sections 15-1-7 (Rev. 2019) and 15-1-39 (Rev. 2019). The record of the pleadings and hearing transcripts before this Court on appeal from the chancery court contains over 1,753 pages. *My search of the record reveals that sections 15-1-39 and 15-1-7 are not mentioned one time.* At no point before the chancery court did the plaintiffs suggest or argue to the chancellor that a ten-year statute of limitations applied to *any* of the claims contained in the second amended complaint, which consisted of 63 pages, 357 numbered paragraphs, and over 200 pages of attached exhibits.

¶33.    The burden that was on the plaintiffs before the chancery court is described in *Stroud v. Progressive Gulf Insurance Co.*, 239 So. 3d 516, 521 (¶15) (Miss. Ct. App. 2017):

> When . . . "a defendant pleads a statute of limitations as a defense and shows that the suit is thereby barred, he has met this burden of proof. *Where the plaintiff asserts that his case is not barred by the statute of limitations, the burden is on him to show some legal or equitable basis for avoiding such period of limitations*." *Hall v. Dillard*, 739 So. 2d 383, 387-88 (¶19) (Miss. Ct. App. 1999) (citing *Gulf Nat'l Bank v. King*, 362 So. 2d 1253, 1255 (Miss. 1978)); *accord, e.g.*, *Sullivan v. Trustmark Nat'l Bank*, 653 So. 2d 930, 931-32 (Miss. 1995); *Archer v. Nissan Motor Acceptance Corp.*, 633 F. Supp. 2d 259, 265 (S.D. Miss. 2007), *aff'd*, 550 F.3d 506 (5th Cir. 2008).

(Emphasis added). Thus, the plaintiffs bore the burden to establish that their claims are not barred. As noted above, the plaintiffs did not file a written response to contest the allegations of the new motions filed by the defendants after the filing of the second amended complaint.

20

At the August 24, 2020 hearing, the plaintiffs presented no argument and cited no authority that a ten-year statute of limitations applied to "certain" of their claims. In an earlier filing, regarding the statute-of-limitations issue, the plaintiffs had cited only Mississippi Code Annotated sections 15-1-69 (Rev. 2012) and 15-1-59 (Rev. 2012) and, without citing another statute, argued that the defendants' actions had been fraudulently concealed and that the statute of limitations would not begin to run until the facts were discovered. The majority points out that in that earlier filing, the plaintiffs stated "the statute of limitations does not bar this action because all claims are timely." However, there is no mention in that earlier filing that a ten-year statute of limitations is applicable.

¶34. It was the plaintiffs' responsibility, while before the chancery court, to raise the applicability of the ten-year statute of limitations, identify the claims that were covered by the ten-year statute and to provide authority to the chancellor to support their argument. That simply did not happen.

¶35. This Court explained the application of the standard of review regarding statute of limitations issues in *Stowe v. Edwards*, 331 So. 3d 24, 33-34 (¶34) (Miss. Ct. App. 2021), as follows:

> The application of the statute of limitations is indeed an issue of law that we review de novo. *See, e.g.*, *Townes v. Rusty Ellis Builder Inc.*, 98 So. 3d 1046, 1050 (¶8) (Miss. 2012). ***But the standard of review does not alter the "long-established rule in this state that a question not raised in the trial court will not be considered on appeal."*** *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) (quoting *Adams v. Bd. of Supervisors of Union Cnty.*, 177 Miss. 403, 170 So. 684, 685 (1936)); *accord, e.g.*, *Triplett v. Mayor & Bd. of Aldermen of City of Vicksburg*, 758 So. 2d 399, 401 (¶9) (Miss. 2000) ("This Court has long held that it will not consider matters raised for the first time on appeal."). When we

21

say that our standard of review is "de novo," that simply means that "this Court sits in the same position as did the trial court" and that we do not defer to the trial court's ruling. *R.J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 270-71 (¶10) (Miss. 2005); *accord, e.g.*, *Jackson v. Payne*, 922 So. 2d 48, 51 (¶5) (Miss. Ct. App. 2006). If we "sit in the same position as the trial court," we will not consider issues or arguments that were never presented to the trial court. Accordingly, consistent with our usual and well-established rule, the plaintiffs' "continuing breach" argument is waived because they failed to raise it in the trial court. Therefore, the plaintiffs have failed to identify any reversible error in the trial court's application of the statute of limitations.

(Emphasis added).

¶36. As stated above, at no point did the plaintiffs argue to the chancellor that a ten-year statute of limitations applied to any of their claims. The chancellor was never asked to decide between the application of a three-year statute of limitations and a ten-year statute of limitations. Our appellate courts have said many times that a trial court will not be found in error on a matter not presented to it for decision. *Jones v. State*, 334 So. 3d 196, 197 (¶6) (Miss. Ct. App. 2022) ("A trial judge will not be found in error on a matter not presented to him for decision." (quoting *Hampton v. State*, 148 So. 3d 1038, 1041 (¶9) (Miss. Ct. App. 2013))); *Kendrick v. Warren*, 309 So. 3d 122, 130 (¶28) (Miss. Ct. App. 2020) ("It is axiomatic that the trial judge cannot be put in error on a matter which was not presented to him for decision." (quoting *Waller v. Wall*, 273 So. 3d 717, 721 (¶16) (Miss. 2019))); *Adams & Assocs. Realty LLC v. Wise*, 315 So. 3d 515, 518 (¶11) (Miss. Ct. App. 2020) ("The rule is that a 'trial judge cannot be put in error on a matter which was never presented to him for decision.'") (quoting *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988))); *Sullivan v. State*, 281 So. 3d 1146, 1167 (¶60) (Miss. Ct. App. 2019) ("It is well- established law that this Court will not consider issues that were not raised

in the trial court.") (citing *Warren v. State*, 456 So. 2d 735, 738 (Miss. 1984))). "A trial judge cannot be put in error on a matter that was not presented to him for decision." *Crenshaw v. State*, 520 So. 2d 131, 134 (Miss. 1988) (accord *Emery v. Greater Greenville Housing and Revitalization Association*, 276 So. 3d 1278, 1285 (¶22) (Miss. Ct. App. 2018) ("[A] trial judge cannot be put in error on a matter not presented to him for his decision."); *Allgood v. Allgood*, 473 So. 2d 416, 423 (Miss. 1985) ("As a prerequisite to obtaining review in this Court, it is incumbent upon a litigant that he not only plead but press his point in the trial court."); *Ammons v. Cordova Floors Inc.*, 904 So. 2d 185, 192 (¶25) (Miss. Ct. App. 2005) (finding issue procedurally barred because it was not raised in the trial court); *Leverett v. Leverett*, 309 So. 3d 116, 121-22 (¶19) (Miss. Ct. App. 2020) ("It is well-settled that issues presented for the first time on appeal are procedurally barred from consideration."). We reiterate, "[o]ne of the most fundamental and long established rules of law in Mississippi is that an appellate court will not review matters on appeal that were not raised at the trial court level." *Leverett*, 309 So. 3d at 121-22 (¶19) (quoting *Hoffman v. Hoffman*, 270 So. 3d 1121, 1128 (¶32) (Miss. Ct. App. 2018)); *Barton v. Barton*, 306 So. 3d 682, 685 (¶9) (Miss. 2020) ("A trial court 'cannot be put in error on a matter which was not presented to it for decision.'") (quoting *Gordon v. Wall (In re Last Will & Testament of Waller)*, 273 So. 3d 717, 721 (¶16) (Miss. 2019))); *Maness v. K & A Enters. of Miss, LLC*, 250 So. 3d 402, 410 (¶21) (Miss. 2018) ("This Court has repeatedly held that a trial judge will not be found in error on a matter not presented to the trial court for a decision.") (quoting *Purvis v. Barnes*, 791 So. 2d 199, 203 (¶8) (Miss. 2001))).

¶37. The ten-year statutes of limitation are mentioned for the first time on appeal, in a cursory fashion, in the plaintiffs' initial brief alleging that "certain claims of [plaintiffs] are subject to a ten-year statute of limitations for trusts and/or to recover land," and "[p]laintiffs' claims also involve continuing torts." Again, nowhere in the record do we find any argument concerning a ten-year statute of limitation being presented to either the Hinds County Circuit Court or to the Rankin County Chancery Court after transfer. Even on appeal, the plaintiffs do not identify which specific claims they contend are governed by a ten-year statute and not the three-year statute.

¶38. In any event, the majority remands the entire matter to the chancery court for the plaintiffs to have another "bite at the apple." Basically, the majority sends this matter back to the chancellor for the plaintiffs to make the arguments and provide the facts and authorities to the chancellor to support their contention on appeal that a ten-year limitation period applies, all of which **could have and should have** been done at or before the August 24, 2020 hearing. The chancellor would have considered and decided whether the ten-year statutes of limitation were applicable to any of plaintiffs' claims at that time, had the plaintiffs raised the issue.

¶39. Based upon the authorities cited above, I would follow the "long-established rule" and find that the plaintiffs' argument that "certain" of their claims are covered by a ten-year statute of limitations, which they first raised on appeal, has been waived. I would not place the chancellor in error for a matter that was not presented to him for decision. I would affirm the chancellor's dismissal of all the claims as being barred by the three-year statute of

limitations.

¶40.    The majority also reverses the chancellor's grant of summary judgment wherein the chancellor found that the statute of limitations was not tolled as to Matthew as a result of the savings provision found in section 15-1-59. As to what must be shown in order to claim the benefits of this provision, this court said in *Stroud*, 239 So. 3d at 522 (¶18):

> "The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to disability." *Rockwell*, 710 So.2d at 391 (¶11). "The Mississippi Supreme Court addressed the law regarding mental competency and statutes of limitation in *Shippers Express v. Chapman*, 364 So. 2d 1097, 1100 (Miss. 1978)[.]" *Brumfield v. Lowe*, 744 So. 2d 383, 387 (¶20) (Miss. Ct. App. 1999). **"The test as to whether the claimant is so 'mentally incompetent' as to toll the running of the statute of limitations, is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life?"** *Id*. (quoting *Shippers Express*, 364 So. 2d at 1000); *accord USF&G Co. v. Conservatorship of Melson*, 809 So. 2d 647, 653 (¶23) (Miss. 2002); *Reeg v. Keel*, 174 So. 3d 309, 312 (¶9) (Miss. Ct. App. 2015).

(Emphasis added). Thus, in response to the defendants' motion for summary judgment, Matthew was required to show, by clear and convincing evidence, that he suffers from such "unsoundness of mind" that he cannot "manage the ordinary affairs of life."[15] Concerning this burden, this Court also said in *Stroud*, 239 So. 3d at 521, (¶16):

> In addition, under Mississippi law, "in order to prove that one is non compos mentis, it must be proven by clear and convincing evidence, rather than by a preponderance of the evidence, and must be proven by the proponent of that position." *Morgan v. Citizens Bank*, 912 So. 2d 1133, 1136 (¶13) (Miss. Ct. App. 2005) (citing *Smith v. Smith*, 574 So. 2d 644, 652 (Miss. 1990)). When,

---

[15] Once the defendants presented their argument that a three-year statute of limitations applied, the burden shifted to Matthew to show some basis for avoiding the limitations period. *Stroud*, 239 So. 3d at 521 (¶15). Matthew filed no response to the defendants' motions for summary judgment. Instead, he relied on attachments to the second amended complaint, only some of which are sworn to and constitute proper summary judgment proof.

as in this case, the nonmoving party must prove a material fact by clear and convincing evidence, the court must take that into account when ruling on a motion for summary judgment. *See Haygood v. First Nat'l Bank of New Albany*, 517 So. 2d 553, 555-56 (Miss. 1987) (following *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986)). "[T]he appropriate summary judgment question [is] whether the evidence in the record could support a reasonable jury finding [for] the plaintiff [on the material issue of fact] by clear and convincing evidence . . . " *Id.* at 556 (quoting *Anderson*, 477 U. S. at 255–56, 106 S. Ct. 2505); *see also Towner v. Moore ex rel. Quitman Cty. Sch. Dist.*, 604 So. 2d 1093, 1098 (Miss. 1992) ("[W]e have long since accommodated our summary judgment process to the 'clear and convincing' quantum of proof requirement.").

Accordingly, the issue before the chancery court was whether Matthew had presented sufficient "summary judgment proof" to "support a reasonable jury finding for [Matthew], by clear and convincing evidence" that he could not "manage the ordinary affairs of life" during the limitation period as set forth in *Stroud*.

¶41. It is clear the Matthew has an intellectual deficit. Those who know him best first sought to have a conservator appointed for him to help with his financial affairs in 2003, after his father's death, but they did not complete the process. Over twelve years later, a new proceeding resulted in a conservator being appointed. However, as noted in *Stroud* 239 So. 3d at 525 (¶29), "the appointment of a conservator does not necessarily or in all cases establish that the person is wholly incompetent, of unsound mind and unable to manage the ordinary affairs of life."

¶42. There is little evidence as to how Matthew lived during the intervening twelve-year period, or for that matter, anytime before or after. There's simply no summary judgment proof concerning Matthews' daily living habits for the vast majority of his life. No one who has observed Matthew on a daily, weekly, monthly or other consistent basis has provided

26

first-hand information as to how Matthew conducts the affairs of his daily life.

¶43.    As in *Stroud*, the experts here give opinions as to Matthew's need for assistance in managing his affairs based upon his intellectual deficits. In opposition, there is evidence contained in the reports and pleadings that Matthew has managed the ordinary affairs of his life for years. As the chancellor noted, Matthew filed the initial complaint in this matter and has filed, and participated in, two other lawsuits arising out of these same circumstances before the conservator was appointed. Matthew has been deposed without anyone raising an objection. Pleadings from the earlier proceedings also show that Matthew was living independently, maintaining full-time employment, and apparently managing the "ordinary" affairs of his life.

¶44.    While Matthew may well need assistance with complex financial matters, that is not the standard used to determine whether section 15-1-59 is applicable. I find that the plaintiffs' proof in opposition to summary judgment was not of "sufficient caliber and quantity" to allow a rational finder of fact to find that, during the applicable limitation period, Matthew was unable to "manage the ***ordinary*** affairs of life."  I would affirm the grant of summary judgment.

**BARNES, C.J., WILSON, P.J., AND GREENLEE, J., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

27